## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBOCAST, INC.,<br>a Delaware corporation,<br><br>      Plaintiff,<br><br>v.<br><br>NETFLIX, INC., a Delaware limited<br>liability company,<br><br>      Defendants. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

### COMPLAINT

Plaintiff Robocast, Inc. ("Robocast") brings this action for patent infringement under the laws of the United States relating to patents, 35 U.S.C. §§ 1 *et seq.*, against Defendant Netflix, Inc. ("Netflix"), hereby alleging as follows:

### THE PARTIES

1.      Robocast is a corporation organized and existing under the laws of the State of Delaware.

2.      Upon information and belief, Netflix is a limited liability company organized and existing under the laws of the State of Delaware, having a principal place of business at 100 Winchester Circle, Los Gatos, California 95032. Upon information and belief, Netflix has appointed The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801 as its registered agent for service of process.

### JURISDICTION AND VENUE

3.      This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§

1

1331 and 1338(a) because this action arises under the patent laws of the United States.

4.     Netflix has elected, upon information and belief, to register under Delaware law and it has thereby acquiesced to personal jurisdiction in the courts of the State of Delaware. Upon further information and belief, Netflix has also submitted to the personal jurisdiction of this Court by committing the acts described below that establish its legal presence within the State of Delaware, including by purposefully providing access to its Netflix website, apps, and services, and directing the supply of information and services to Internet-browsing Delaware residents, and/or contracting to do the same, wherein the provision of such access and the directing of such information and services has involved and necessitated Netflix's unauthorized and infringing practicing of the claimed inventions of the Patents-in-Suit. Said information and services include infringing automated video playlists, their corresponding digital Internet content, and associated digital advertising content. By virtue of its above-described actions, while engaging in the unauthorized and infringing practicing of the claimed inventions of the Patents-in-Suit, Netflix has transacted business, performed services, contracted to supply services, caused tortious injury, regularly done or solicited business, and/or engaged in a persistent course of conduct within the State of Delaware, and Netflix has additionally derived substantial revenues from or as the result of the implicated information and services and/or associated advertising used, consumed, and/or presented in Delaware. In light of Netflix's aforementioned contacts with the State of Delaware and its purposeful availment of the rights and benefits of Delaware law, maintenance of this suit would not offend traditional notions of fair play and substantial justice.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), and (d) and 1400(b) because, *inter alia*, a substantial part of the events or omissions giving rise

to the claims occurred in this judicial district, Netflix is subject to personal jurisdiction in and therefore resides in this judicial district, and Netflix has committed acts of patent infringement and has a regular presence in this judicial district.

## THE PATENTS-IN-SUIT

6.      On December 26, 2006, United States Patent No. 7,155,451 (the "'451 Patent"), entitled "Automated Browsing System For Publishers And Users On Networks Serving Internet And Remote Devices," was duly and legally issued by the United States Patent and Trademark Office to inventor Damon C. Torres. Robocast is the sole owner by assignment of the entire rights, title, and interest in and to the '451 Patent, including the rights to sue on and recover damages for any past infringements thereof. A true and correct copy of the '451 Patent is attached hereto as Exhibit 1.

7.      On December 10, 2013, United States Patent No. 8,606,819 (the "'819 Patent"), entitled "Automated Content Scheduler And Displayer," was duly and legally issued by the United States Patent and Trademark Office to inventor Damon C. Torres. Robocast is the sole owner by assignment of the entire rights, title, and interest in and to the '819 Patent, including the rights to sue on and recover damages for any past infringements thereof. A true and correct copy of the '819 Patent is attached hereto as Exhibit 2.

8.      On February 24, 2015, United States Patent No. 8,965,932 (the "'932 Patent"), entitled "Automated Content Scheduler And Displayer," was duly and legally issued by the United States Patent and Trademark Office to inventor Damon C. Torres. Robocast is the sole owner by assignment of the entire rights, title, and interest in and to the '932 Patent, including the rights to sue on and recover damages for any past infringements thereof. A true and correct copy of the '932 Patent is attached hereto as Exhibit 3.

9.      The '451 Patent, the '819 Patent, and the '932 Patent shall hereinafter be referred

to together, collectively, as the "Patents-in-Suit." These three Patents-in-Suit all share a common specification, given that the '819 and '932 Patents are each continuations of the application that matured into the '451 Patent.   Moreover, all three Patents-in-Suit share a common priority date of not later than September 3, 1996 based upon underlying provisional patent application No. 60/025,360.

10.    By way of background, through its founder Damon C. Torres, Robocast invented several new paradigms for improving the web browsing experience for Internet users in the mid-1990s at a time when the World Wide Web was still in its relative infancy. As disclosed and claimed in the seminal Patents-in-Suit, these paradigms included innovative and improved methods by which websites can deliver and present web content on a user's computer that is retrieved from a plurality of different Internet-accessible data resources, notably including multimedia resources comprising streamable video and/or streamable audio content. A press release issued by Microsoft confirmed that by December of 2001, the technologies that would ultimately become Robocast's patented inventions had earned it the reputation of being a "pioneering Web company offering viewing automation tools for a variety of display devices."

11.    The Robocast inventions claimed in the Patents-in-Suit are directed to providing a specific and unconventional technological solution, necessarily rooted in computer technology, to a known technological problem that existed with respect to Internet web browsing as it was then being practiced by computer users in the early 1990s-time frame. As expressly taught in the intrinsic record of the Patents-in-Suit and as then understood by ordinarily skilled artisans, the nature of this problem was that computer users browsing the Internet had no easy and efficient means available for accessing, retrieving and consuming content from a multitude of different Internet-accessible resources. *See, e.g.*, ('451 Patent at

Abstract, FIG. 7, 5:51-6:4; Prosecution history for Appl. No. 09/144,906, Response to June 18, 2001 Office Action at p. 13; Prosecution history for Appl. No. 09/144,906, Brief on Appeal dated March 7, 2003 at pp. 5-6; Provisional Appl. No. 60/025,360 at pp. 1-2).   Rather, each resource needed to be accessed one at a time, with the user's web browser requiring substantial decisional input from the user, i.e., laboriously clicking through a series of links and/or web pages in order to individually navigate to each such resource and obtain its corresponding content. (*Id.*). The Patents-in-Suit explain that this prior art approach was problematic because it undesirably "require[d] a significant amount of user effort and decision-making to drive the web surfing experience," and thereby resulted in a "very cumbersome and time consuming" web browsing experience for computer users browsing the Internet. (*Id.*).

12.    The Patents-in-Suit provide a specific and unconventional technology-based solution to this prior art problem by disclosing and claiming innovative methods through which providers offering Internet-based content through, for example, an Internet website, can automatically deliver and present web content on the computer of a user who is surfing the Internet. In particular, at the heart of Robocast's inventive solution is a key active step recited and captured in every method claim of the Patents-in-Suit wherein a provider creates an organized arrangement of Internet-based content corresponding to a plurality of different Internet-accessible resources in the form of a "show structure of nodes." *See, e.g.*, ('451 Patent at Abstract, FIGS. 2B-2F, 1:16-18, 2:51-3:6, 3:22-31, 4:12-14, 5:28-34, 6:65-7:62, 8:31-33). Each of these "nodes" is an identifier of a distinct Internet-accessible resource that includes its address, and the "show structure" specifies one or more paths through the plurality of nodes that can serve to sequence and schedule how content obtained from these resources is provided to the user's computer. (*Id.*). In accordance with certain claimed "show structure of nodes"

5

embodiments, items of content corresponding to each different resource are automatically accessed from the Internet and presented on the user's computer in continuous sequential fashion one after another, all without requiring any input from the user beyond (at most) a single initial click that serves to commence the show structure. (*Id.*). As stated in the intrinsic record, the innovative methods of the Patents-in-Suit thus solve the problem identified in the prior art by greatly reducing the number of clicks and decisions required of a computer user when browsing the Internet to retrieve content from a multitude of different Internet accessible resources, thereby providing for the first time a significantly easier and more efficient way for computer users to be able to "play" the Internet automatically by exerting the minimal effort of making just a single click. *See, e.g.*, ('451 Patent at Abstract, FIG. 7, 2:53-55, 5:51-6:4; Prosecution history for Appl. No. 09/144,906, Response to June 18, 2001 Office Action at p. 13; Prosecution history for Appl. No. 09/144,906, Brief on Appeal dated March 7, 2003 at pp. 5-6; Provisional Appl. No. 60/025,360 at pp. 1-2).

13.    In the relevant prior art at the time of the claimed inventions, Robocast's inventive technology-based solution to the above-described web browsing problem which websites can provide by creating the types of "show structures of nodes" recited and captured in the method claims of the Patents-in-Suit was unknown and undisclosed. Likewise unknown and undisclosed in the relevant prior art were each of the various recited activities performed in accordance with the "show structure of nodes" that comprise the other specific claimed method steps, whether standing alone or whether combined in the particular ordered combinations of limitations that are claimed. Accordingly, the inventive claim elements directed to the "show structure of nodes" and their claimed combinations were neither well-understood, routine, nor conventional to an ordinarily skilled artisan in the relevant field at the time of the Patents-in-

6

Suit.

14.    The innovative method claims of the Patents-in-Suit also recite and are directed to several particular features relating to the claimed "show structures of nodes" that constitute specific and concrete technological improvements for advancing the computer functionality and computer capabilities of the prior art websites that were engaged in interacting with web surfing users' computers (hereinafter, "technological improvements"). Alone and in combination, an ordinarily skilled artisan would understand these unconventional claimed technological improvements as serving to improve and beneficially modify the functioning and capabilities of such websites as a whole, allowing them to newly provide a qualitatively improved web browsing experience for computer users who were seeking to retrieve and consume content from a multitude of different Internet-accessible resources.

15.    As one example of unconventional claimed technological improvements over the prior art, independent Claim 22 of the '451 Patent, independent Claim 16 of the '819 Patent, and independent Claim 22 of the '932 Patent each recite and capture a method step of creating a claimed "show structure of nodes" based on the search results returned from an on-line search. *Cf.* ('451 Patent at Abstract, FIG. 7, 1:16-34, 3:36-42, 8:27-33, 10:59-11:3, 11:61-12:8, 16:56-17:5). The intrinsic record of the Patents-in-Suit contains express statements that "[t]here is no teaching in [the] prior art to create an automated show structure in response to a search," and likewise that "[s]uch an arrangement has not been taught in the prior art." *See, e.g.*, (Prosecution history for Appl. No. 09/144,906, Response to June 18, 2001 Office Action at p. 13; Prosecution history for Appl. No. 09/144,906, Brief on Appeal dated March 7, 2003 at pp. 5-6, 24-26). Moreover, the intrinsic record directly explains, and an ordinarily skilled artisan would understand, how and why this inventive arrangement constitutes a technological improvement

over the prior art. To wit, the prior art on-line search process that then existed of "obtaining a plurality of URLs and thereafter retrieving the contents of each URL, one at a time is very cumbersome and time consuming" for the web surfing computer user. (*Id.*). By contrast, Robocast's inventive process of "assembling the list of retrieved URLs into a show structure that retrieves and displays each of the contents corresponding to a URL automatically and without user input" significantly improves the quality of the web browsing experience for a computer user engaged in on-line searching for web content. (*Id.*).

16.    In the relevant prior art at the time of the claimed inventions, Robocast's inventive technological improvements applicable to websites that provided them with the above-described new functionality and capabilities for creating "show structures of nodes" based on the results returned from on-line searches as recited and captured in Claim 22 of the '451 Patent, Claim 16 of the '819 Patent, and Claim 22 of the '932 Patent were unknown and undisclosed. Likewise unknown and undisclosed in the relevant prior art were each of the various recited activities performed in connection with creating "show structures of nodes" based on the result of on-line searches that comprise the other specific claimed method steps, whether standing alone or whether combined in the particular ordered combinations of limitations that are claimed. Accordingly, the inventive claim elements directed to these specific technological improvements and their claimed combinations were neither well-understood, routine, nor conventional to an ordinarily skilled artisan in the relevant field at the time of the Patents-in-Suit.

17.    As another example of unconventional claimed technological improvements over the prior art, independent Claim 37 of the '451 Patent, and each of the independent claims of the '819 and '932 Patents, recite and capture creating various embodiments of "show

8

structures of nodes" having multidimensional features for causing web content corresponding to multiple different resources identified in the show structures to be acted upon concurrently with one another. *Cf.* ('451 Patent at FIGS. 2B-2E, 2:65-3:6, 6:65-7:50; Prosecution history for Appl. No. 09/144,906, Response to December 23, 1999 Office Action at p. 9; Prosecution history for Appl. No. 09/144,906, Response to October 24, 2000 Office Action at pp. 12-13; Prosecution history for Appl. No. 09/144,906, Response to June 18, 2001 Office Action at pp. 14-15; Prosecution history for Appl. No. 09/144,906, Brief on Appeal dated March 7, 2003 at pp. 6-7, 26-28). For example, these multidimensional features can cause multiple different items of web content corresponding to a plurality of different resources to be: (i) accessed over the Internet concurrently; (ii) presented on a web browsing user's computer concurrently; and/or (iii) accessed and presented concurrently. (*Id.*). The intrinsic record of the Patents-in-Suit contains express statements from the applicant indicating that there is an absence of any reference in the prior art that discloses or suggests a "show structure of nodes" having such claimed "multidimensional" attributes. (*Id.*). At the time of the inventions, an ordinarily skilled artisan would have understood these claimed multidimensional features as constituting technological improvements over the prior art by inventively providing web surfing computer users with the opportunity to simultaneously consume web content from a plurality of different Internet-accessible resources in accordance with a "show structure of nodes," as opposed to being limited to consuming one item of web content at a time. (*Id.*). Moreover, by concurrently accessing one item of web content while other items are being accessed and/or presented, such an ordinarily skilled artisan would likewise have understood the claimed multidimensional features as representing further inventive technological improvements over the prior art by ensuring for the first time that the show provided by the "show structure of nodes" can

seamlessly proceed along its course without undesirable interruption or delay when transitioning from presenting the resources of one node to the next. (*Id.*).

18.    In the relevant prior art at the time of the claimed inventions, Robocast's inventive technological improvements applicable to websites that provided them with the above described new functionality and capabilities for creating "show structures of nodes" having multidimensional features as recited and captured in Claim 37 of the '451 Patent, and each of the independent claims of the '819 and '932 Patents, were unknown and undisclosed. Likewise unknown and undisclosed in the relevant prior art were each of the various recited activities performed in connection with the multidimensional features of the "show structures of nodes" that comprise the specific claimed method steps, whether standing alone or whether combined in the particular ordered combinations of limitations that are claimed. Accordingly, the inventive claim elements directed to these specific technological improvements and their claimed combinations were neither well-understood, routine, nor conventional to an ordinarily skilled artisan in the relevant field at the time of the Patents-in-Suit.

19.    As a further example of unconventional claimed technological improvements over the prior art, independent Claim 1 and certain dependent claims of the '451 Patent, independent Claims 1, 23, and 26 of the '819 Patent, and independent Claim 1 and certain dependent claims of the '932 Patent, recite and capture embodiments that provide "interactively variable duration information" as part of the step of creating the claimed "show structures of nodes." *Cf.* ('451 Patent at FIG. 7, 3:26-31, 5:30-33; 9:31-36; 11:10-12, 16:44-55, 17:7-13; Prosecution history for Appl. No. 09/144,906, Response to December 23, 1999 Office Action at pp. 7-8; Prosecution history for Appl. No. 09/144,906, Response to October 24, 2000 Office Action at pp. 6-7; Prosecution history for Appl. No. 09/144,906, Response to June 18, 2001

Office Action at p. 14; Prosecution history for Appl. No. 09/144,906, Brief on Appeal dated March 7, 2003 at p. 6, 19, 33). As expressly claimed, this "interactively variable duration information" represents the duration for which content corresponding to an Internet-accessible resource from the show structure will be presented by default to the web browsing computer user, and it enables the user to change that duration such that the rate of transition from one node to another in the show structure can be interactively varied and controlled by the user. (*Id.*). The intrinsic record of the Patents-in-Suit contains an express statement from the applicant that there is an absence of any reference in the prior art that discloses or suggests providing such "interactively variable duration information" as part of creating a "show structure of nodes." (*Id.*). Moreover, the intrinsic record indicates, and an ordinarily skilled artisan would understand, why these inventive "interactively variable duration information" features constitute technological improvements over the prior art in that they empower web surfing computer users with an innovative new capability for controlling the speed of the show structure by increasing or decreasing the amount of time for which resource content will be presented. (*Id.*).

20.     In the relevant prior art at the time of the claimed inventions, Robocast's inventive technological improvements applicable to websites that afforded them the above-described new functionality and capabilities for providing "interactively variable duration information" as part of creating "show structures of nodes" as recited and captured in Claim 1 and certain dependent claims of the '451 Patent, Claims 1, 23, and 26 of the '819 Patent, and Claim 1 and certain dependent claims of the '932 Patent, were unknown and undisclosed. Likewise unknown and undisclosed in the relevant prior art were each of the various recited activities performed in connection with the "interactively variable duration information"

features of the "show structures of nodes" that comprise the other specific claimed method steps, whether standing alone or whether combined in the particular ordered combinations of limitations that are claimed. Accordingly, the inventive claim elements directed to these specific technological improvements and their claimed combinations were neither well-understood, routine, nor conventional to an ordinarily skilled artisan in the relevant field at the time of the Patents-in-Suit.

21.     The specific and concrete technological solution and improvements recited and captured by the claims of the Patents-in-Suit as exemplified above prevent those claims from preempting or otherwise disproportionately tying up the use of all methods by which content derived from a plurality of different Internet-accessible data resources can be delivered and presented on a user's computer. Indeed, all the claims of the Patents-in-Suit are narrowly drawn and circumscribed so as to be directed to only one unconventional discrete way of providing such content that requires creating the recited "show structures of nodes." Moreover, certain claims recite and capture additional limitations of distinctive significance that even further preclude undue preemption such as "show structures" that need to be based on the results returned from on-line searches, and/or "show structures" that provide particular multidimensional features or "interactively variable duration information." By contrast, the specification of the Patents-in-Suit also discloses many unclaimed alternative ways of procuring multifarious web content (such as the laborious point-and-click method) that were already known in the prior art, and all of which undesirably "require a significant amount of user effort and decision-making to drive the web surfing experience." *See, e.g.*, ('451 Patent at 5:51-6:4).

22.     Upon information and belief, Netflix has had actual and/or constructive knowledge of the existence of the Patents-in-Suit beginning on an initial date as yet unknown

that predates the expiration of the Patents-in-Suit. As one example, Netflix board member Brad Smith, whose areas of expertise include intellectual property law, served as Microsoft's general counsel starting in 2002,[1] and held this position during the period Robocast was in litigation against Microsoft regarding the '451 Patent, which concluded in April 2014, resulting in Microsoft licensing each of the Patents-in-Suit.[2]  *See Robocast, Inc. v. Microsoft Corp.*, Case No. 10-1055-RGA (D. Del. Dec. 06, 2010).  Upon information and belief, Smith had knowledge of the Patents-in-Suit when he joined Netflix's board in 2015 as a result.  As such, Netflix, by and through its relationship with Smith, knew, should have known, or was willfully blind as to the existence of the Patents-in-Suit at the time of Netflix's infringing acts. As another example, Netflix founder, chairman, and CEO Reed Hastings served on the Microsoft board from 2007-2012, during which time the Microsoft case was pending.[3] *See id.*  Upon information and belief, Hastings had knowledge of at least the '451 Patent as a result.  As such, Netflix, by and through its relationship with Hastings, knew, should have known, or was willfully blind as to the existence of at least the '451 Patent at the time of Netflix's infringing acts.  As yet another example, in 2016, Netflix became a licensee of both Tivo's and Intellectual Ventures' patent portfolios, and the '451 Patent is cited 21 times against patents or applications in the Tivo portfolio and twice against patents or applications in the Intellectual Ventures portfolio.[4]  Upon information and belief, Netflix had knowledge of the Patents-in-Suit as a result.  As such, Netflix, knew, should have known, or was willfully blind as to the existence of the Patents-in-

---

[1] https://ir.netflix.net/governance/Leadership-and-directors/person-details/default.aspx?ItemId=e39e155a-d58c-441e-b632-4f85ffe7e633

[2] The '451, '819, and '932 Patents share a common specification and all claim priority to provisional patent application No. 60/025,360, filed September 3, 1996.

[3] https://news.microsoft.com/2012/10/09/microsoft-announces-reed-hastings-will-not-seek-re-election/

[4] http://www.patentbuddy.com/Patent/7155451

Suit at the time of Netflix's infringing acts.

**NETFLIX'S INFRINGING OPERATION OF ITS NETFLIX INTERNET PLATFORM**

23.    Netflix has operated its video hosting Internet platform found, for example, at www.netflix.com -- including the underlying computer server platform/systems responsible for publishing that website and supplying platform functionality -- in an infringing manner that practiced method claims of the Patents-in-Suit without Robocast's authorization (hereinafter, the "Netflix Internet platform"). In particular, Netflix infringed the Patents-in-Suit by virtue of generating, supporting, and providing automated video playlists to the web browsers, and/or to the Netflix apps, of computer users who accessed the Internet on computing devices such as desktop or laptop PCs, smartphone or tablet mobile devices, and/or smart TVs. Among the types of Netflix automated video playlists implicated in such infringement are its Autoplay playlists, its Flixtape playlists, and all other static or dynamic automated video playlists provided by Netflix which resulted in sets or collections of different videos being automatically played in a sequential order one after the other without the need for ongoing directive input from the on-line computer user.

24.    Each of Netflix's infringing automated video playlists was embodied by a claimed "show structure of nodes" within the meaning of the Patents-in-Suit that was created by Netflix and provided to a user's computing device to provide an organized arrangement of Internet content. Each of the nodes in these "show structures" identified a different Internet-accessible resource comprised of content that included a streamable video and its associated thumbnail image(s), and each node contained a corresponding resource address (e.g., a URL address). These Netflix "show structures" specified one or more pathways through their respective pluralities of nodes that sequenced and scheduled the videos and associated thumbnail images for presentation on the user's computing device. In turn, in accordance with

the Netflix "show structures" that embodied its infringing automated video playlists, videos and associated thumbnail images were automatically accessed over the Internet and presented on the user's computing device in continuous sequential fashion one after the other, all without requiring input from the computer user beyond (at most) just a single initial click that served to commence a playlist.

25.    Netflix's infringing automated video playlists comprised the claimed multidimensional attributes of the Patents-in-Suit whereby various combinations of the streamable video or thumbnail image content corresponding to different nodes in their embodying "show structures" were concurrently accessed over the Internet, concurrently presented on a user's computer, and/or concurrently accessed and presented. The embodying "show structures" of Netflix's infringing automated video playlists also provided the claimed "interactively variable duration information" consisting of the default duration for which the streamable video and/or thumbnail image content corresponding to a node was to be presented on a user's computing device, subject to being interactively varied by the user via, for example, a scrubber bar interface further provided by the Netflix Internet platform.   Moreover, certain of Netflix's infringing automated video playlists were embodied by "show structures" that were created based on the search results returned from on-line searches, including the types of keyword searches for videos that a computer user can undertake on the Netflix Internet platform.

26.    The Netflix Internet platform also caused advertising content to be presented to users in connection with the automatic presentation of video content, including promotional content.

27.    The Netflix Internet platform also provided functionality, instructions, and other

assistance that enabled its registered account holders to generate, edit, operate, use, and save infringing automated video playlists similar in nature to those described above.

28.    On information and belief, Netflix designed, intended, and instructed users to use the Netflix Internet platform in infringing ways. For example, Netflix encouraged the binge-watching of content organized in Netflix's infringing automated video playlists by, for example, incentivizing users to binge-watch content and using the "binge-watching" term and concept in marketing campaigns and at public-facing events. As one example, in 2018 Netflix introduced the "Patches" feature that rewarded viewers of Netflix's children's content with "stickers and patches" for watching a threshold number of episodes.[5]

29.    As another example, Netflix CEO Reed Hastings touted Netflix's binge-watching functionality during an earnings call: "Netflix's brand for TV shows is really about binge viewing. It's the ability to just get hooked and watch episode after episode. It's addictive. It's exciting. It's different. And our release strategy for original content emphasizes that brand strength, which is to be able to get hooked and pour through those episodes rather than get strung out."[6] As yet another example, Netflix Chief Content Officer Ted Sarandos stated: "Do you love the indulgence of watching episode after episode of your favorite shows on Netflix? Have you ever wished you could do the same with new shows when they premiere on TV? Unlike any major TV premiere before it, we are debuting all eight episodes of the first season at the same time today. Conventional TV strategy would be to stretch out the show to keep you coming back every week. We are trying to give our members what they want; Choice and control. If you want to watch one episode a week, you can. If you want to watch the whole

---

[5] https://www.grunge.com/260248/the-bizarre-way-netflix-tried-to-encourage-binge-watching/
[6] https://online.ucpress.edu/fq/article/75/1/35/118489/Netflix-and-Heal-The-Shifting-Meanings-of-Binge

season this week, you can do that too."[7] "Netflix even used the terms 'binge-watching' and 'binge racer' as part of their marketing campaigns, encouraging their users to seek immediate gratification from all of the shows and films at their disposal."[8]

30.    On information and belief, during the period from at least 2016 forward, binge-watching had "evolved into Netflix's main marketing strategy in the course of popularization of streaming, recommendation, and cord cutting practices."[9]

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,155,451

31.    Robocast realleges and incorporates by reference each and every allegation of Paragraphs 1-30 above as if fully set forth herein.

32.    Netflix has directly infringed one or more claims of the '451 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine equivalents, by without authority operating its Netflix Internet platform in an infringing manner that practiced at least claim 1 of the '451 Patent.  In the alternative and upon information and belief, Netflix is vicariously liable for such direct infringement by exercising control or direction over the practicing, in whole or in part, of at least claim 1 of the '451 Patent through the infringing operation of its Netflix Internet platform that has been conducted by an as yet unknown third party pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement.

33.    Upon information and belief, Netflix has had actual and/or constructive knowledge of the existence of the '451 Patent since not later than as yet unknown that predates

---

[7] https://gigaom.com/2012/02/06/netflix-original-content-binge-viewing/
[8] https://www.oxfordstudent.com/2021/01/21/binge-watching-tv-shows-in-an-age-of-netflix/#:~:text=all%20too%20well.-,Netflix%20even%20used%20the%20terms%20'binge-watching'%20and%20',and%20films%20at%20their%20disposal
[9] https://journals.sagepub.com/doi/10.1177/2056305119883426

the expiration of the '451 Patent as detailed in paragraph 22 above. With knowledge of the '451 Patent, Netflix has indirectly infringed one or more claims thereof under 35 U.S.C. § 271(b) through the active inducement of direct infringement by intending to encourage, and in fact encouraging, its registered account holders, and potentially others as yet unknown, to generate, operate and use the aforesaid types of automated video playlists within the United States in an infringing manner that practiced the inventions of one or more claims of the '451 Patent. Netflix has actively induced such direct infringement through its Netflix Internet platform by thereby providing, inter alia, functionality, instructions, and other assistance that have served to facilitate, promote, and cause its registered account holders, and/or potentially others as yet unknown, to generate, edit, operate, use, and/or save infringing automated video playlists. Upon information and belief, Netflix has performed the acts that constitute inducement of infringement with the knowledge or willful blindness that the resulting acts induced thereby would constitute direct infringement by its registered account holders, and/or potentially by others as yet unknown.

34.    With knowledge of the '451 Patent, Netflix has also indirectly infringed one or more claims thereof under 35 U.S.C. § 271(c) by making, selling, offering for sale, using, making available for use, and/or importing within or into the United States its Netflix Internet platform, functionality that enables the generating, editing, operating, using, and/or saving of infringing automated video playlists by its registered account holders, and/or potentially by others as yet unknown, knowing that such functionality is especially made or especially adapted for use in direct infringements of the '451 Patent, and knowing that such functionality is not a staple article or commodity of commerce suitable for substantial non-infringing use.

35.    Upon information and belief, Netflix's acts of infringing the '451 Patent have

18

been willful and undertaken in knowing and deliberate disregard of Robocast's patent rights.

36.     Robocast has been damaged by Netflix's infringements of the '451 Patent in an amount to be determined at trial.

37.     Upon information and belief, Netflix's willful infringements, together with its other potential conduct in this action, have or will render this case exceptional under 35 U.S.C. § 285 and thereby entitle Robocast to recovery of its attorneys' fees and costs incurred in prosecuting this action.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,606,819

38.     Robocast realleges and incorporates by reference each and every allegation of Paragraphs 1-37 above as if fully set forth herein.

39.     Netflix has directly infringed one or more claims of the '819 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine equivalents, by without authority operating its Netflix Internet platform in an infringing manner that practiced at least claim 1 of the '819 Patent.  In the alternative and upon information and belief, Netflix is vicariously liable for such direct infringement by exercising control or direction over the practicing, in whole or in part, of at least claim 1 of the '819 Patent through the infringing operation of its Netflix Internet platform that has been conducted by an as yet unknown third party pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement.

40.     Upon information and belief, Netflix has had actual and/or constructive knowledge of the existence of the '819 Patent since not later than the expiration of the '891 Patent as detailed in paragraph 22 above. With knowledge of the '819 Patent, Netflix has indirectly infringed one or more claims thereof under 35 U.S.C. § 271(b) through the active inducement of direct infringement by intending to encourage, and in fact encouraging, its

registered account holders, and potentially others as yet unknown, to generate, operate, and use the aforesaid types of automated video playlists within the United States in an infringing manner that practiced the inventions of one or more claims of the '819 Patent. Netflix has actively induced direct infringement through its Netflix Internet platform by thereby providing, inter alia, functionality, instructions, and other assistance that have served to facilitate, promote, and cause its registered account holders, and/or potentially others as yet unknown, to generate, edit, operate, and/or use  infringing automated video playlists. Upon information and belief, Netflix has performed the acts that constitute inducement of infringement with the knowledge or willful blindness that the acts induced thereby would constitute direct infringement by its registered account holders, and/or potentially by others as yet unknown.

41.     With knowledge of the '819 Patent, Netflix has also indirectly infringed one or more claims thereof under 35 U.S.C. § 271(c) by making, selling, offering for sale, using, making available for use, and/or importing within or into the United States its Netflix Internet platform functionality that enables the generating, editing, operating, using, and/or saving of infringing automated video playlists by its registered account holders, and/or potentially by others as yet unknown, knowing that such functionality is especially made or especially adapted for use in direct infringements of the '819 Patent, and knowing that such functionality is not a staple article or commodity of commerce suitable for substantial non- infringing use.

42.     Upon information and belief, Netflix's acts of infringing the '819 Patent have been willful and undertaken in knowing and deliberate disregard of Robocast's patent rights.

43.     Robocast has been damaged by Netflix's infringements of the '819 Patent in an amount to be determined at trial.

44.     Upon information and belief, Netflix's willful infringements, together with its

other potential conduct in this action, have or will render this case exceptional under 35 U.S.C. § 285 and thereby entitle Robocast to recovery of its attorneys' fees and costs incurred in prosecuting this action.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,965,932

45.    Robocast realleges and incorporates by reference each and every allegation of Paragraphs 1-44 above as if fully set forth herein.

46.    Netflix has directly infringed one or more claims of the '932 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine equivalents, by without authority operating its Netflix Internet platform in an infringing manner that practiced at least claim 1 of the '932 Patent.  In the alternative and upon information and belief, Netflix is vicariously liable for such direct infringement by exercising control or direction over the practicing, in whole or in part, of the inventions of at least claim 1 of the '932 Patent through the infringing operation of its Netflix Internet platform that has been conducted by an as yet unknown third party pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement.

47.    Upon information and belief, Netflix has had actual and/or constructive knowledge of the existence of the '932 Patent since not later than the expiration of the '932 Patent as detailed in paragraph 22 above. With knowledge of the '932 Patent, Netflix has indirectly infringed one or more claims thereof under 35 U.S.C. § 271(b) through the active inducement of direct infringement by intending to encourage, and in fact encouraging, its registered account holders, and potentially others as yet unknown, to generate, operate, and use the aforesaid types of automated video playlists within the United States in an infringing manner that practiced the inventions of one or more claims of the '932 Patent. Netflix has actively

induced direct infringement through its Netflix Internet platform by thereby providing, inter alia, functionality, instructions, and other assistance that have served to facilitate, promote and cause its registered account holders, and/or potentially others as yet unknown, to generate, edit operate, use, and/or save infringing automated video playlists. Upon information and belief, Netflix has performed the acts that constitute inducement of infringement with the knowledge or willful blindness that the acts induced thereby would constitute direct infringement by its registered account holders, and/or potentially by others yet unknown.

48.     With knowledge of the '932 Patent, Netflix has also indirectly infringed one or more claims thereof under 35 U.S.C. § 271(c) by making, selling, offering for sale, using, making available for use, and/or importing within or into the United States its Netflix Internet platform functionality that enables the generating, editing, operating, using, and/or saving of infringing automated video playlists by its registered account holders, and/or potentially by others as yet unknown, knowing that such functionality is especially adapted for use in direct infringements of the '932 Patent, and knowing that such functionality is not a staple article or commodity of commerce suitable for substantial non-infringing use.

49.     Upon information and belief, Netflix's acts of infringing the '932 Patent have been willful and undertaken in knowing and deliberate disregard of Robocast's patent rights.

50.     Robocast has been damaged by Netflix's infringements of the '932 Patent in an amount to be determined at trial.

51.     Upon information and belief, Netflix's willful infringements, together with its other potential conduct in this action, have or will render this case exceptional under 35 U.S.C. § 285 and thereby entitle Robocast to recovery of its attorneys' fees and costs incurred in prosecuting this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Robocast respectfully requests that this Court enter a judgment in its favor and against Netflix as follows:

(a)     Declaring that Netflix has directly infringed, induced others to infringe, and/or committed acts of contributory infringement with regard to one or more claims of the Patents-in- Suit;

(b)     Awarding damages adequate to fully compensate Robocast within the meaning of 35 U.S.C. § 284 for the past acts of infringement committed by Netflix, as well as any applicable prejudgment and post-judgment interest thereon at the maximum rates allowed by law;

(c)     Awarding treble or otherwise enhanced damages to Robocast pursuant to 35 U.S.C. § 284 for the acts of willful infringement committed by Netflix, as well as any applicable prejudgment and post-judgment interest thereon at the maximum rates allowed by law;

(d)     That an accounting be performed to determine the damages to be awarded to Robocast as a result of Netflix's infringing activities, including an accounting for infringing conduct not presented at trial and an award of additional damages for any such infringing activities;

(e)     Declaring that this action is exceptional within the meaning of 35 U.S.C. § 285, and concomitantly awarding Robocast its attorneys' fees as the prevailing party in this action, as well as any applicable prejudgment and post-judgment interest thereon at the maximum rates allowed by law;

(f)     Awarding Robocast its costs and expenses incurred in this action; and

(g)     Awarding any further relief to Robocast that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Robocast demands a jury trial as to all issues arising in this action that are so triable.


March 7, 2022

OF COUNSEL:

MCKOOL SMITH, P.C.

Steven Rizzi
Ramy E. Hanna (DE Bar Id #: 5494)
One Manhattan West
395 9th Avenue, 50th Floor
New York, New York 10001-8603
Telephone: (212) 402-9400
srizzi@McKoolSmith.com
rhanna@McKoolSmith.com


CANTOR COLBURN LLP

Marc N. Henschke
20 Church Street, 22nd Floor
Hartford, Connecticut 06103-3027
(860) 286-2929
mhenschke@cantorcolburn.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 North King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

Attorneys for Plaintiff
ROBOCAST, INC.