IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBOCAST, INC.,

    Plaintiff,

v.

NETFLIX, INC.

    Defendant.

Civil Action No. 22-305-RGA

MEMORANDUM

Before me is Defendant's motion to dismiss for failure to state a claim. (D.I. 11). The motion has been fully briefed and I have considered the parties' briefing. (D.I. 12, 18, 19). For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

**I.  BACKGROUND**

This is a patent infringement action. On March 7, 2022, Plaintiff Robocast filed its Complaint against Defendant Netflix, alleging direct, indirect, and willful infringement of U.S. Patent Nos. 7,155,451 ("the '451 patent"), 8,606,819 ("the '819 patent"), and 8,965,932 ("the '932 patent") (collectively, "the asserted patents"). (D.I. 1). The asserted patents relate to methods of automating the presentation of computer content. (*Id.* at 5).

**II.  LEGAL STANDARD**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed,

1

but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up)).

## III.  DISCUSSION

### A.  Direct Infringement

To satisfy the *Iqbal/Twombly* pleading standard in a patent case, "[s]pecific facts are not necessary." *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A complaint need only give the defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." *Id.*

Netflix contends that the Complaint has failed to provide fair notice because Robocast did not show how the accused products and features infringed. (D.I. 12 at 4-5). I agree with Robocast that no such showing is required. *Disc Disease*, the case Robocast relies upon for this point, is instructive. There, the Federal Circuit reversed a district court's dismissal of the complaint on the basis that the plaintiff had failed to "explain how Defendants' products infringe on any of Plaintiff's claims" as the complaint "merely alleges that certain of Defendants' products 'meet each and every element of at least one claim' of Plaintiff's patents." *Disc Disease*, 888 F.3d at 1260. The Federal

2

Circuit found that the plaintiff's allegations were sufficient under *Iqbal/Twombly*, explaining that the complaint specifically identified the accused products and alleged that those products met each and every element of at least one claim of the patents-in-suit. *Id.* These disclosures and allegations were enough to provide the defendants with "fair notice" of infringement of the asserted patents. *Id.* Just so here. In its Complaint, Robocast identifies the accused products and features—the "Netflix Internet platform" and its "automated video playlists," such as its "Autoplay playlists," "Flixtape playlists," and "all other static or dynamic video playlists provided by Netflix" (D.I. 1 at 14)—and alleges that the platform and its playlists satisfy each limitation of "at least claim 1" of each of the asserted patents. (*Id.* at 17, 19, 21).

Netflix argues that there are important facts in this case which distinguish it from *Disc Disease*. (D.I. 19 at 2-4). It posits that, unlike the plaintiff in *Disc Disease*—which specifically identified the accused products "by name and by attaching photos of the product packaging as exhibits," 888 F.3d at 1260—Robocast offers only "ambiguous" allegations (D.I. 19 at 2). Thus, says Netflix, this case is less like *Disc Disease* and more like *Promos Technologies, Inc. v. Samsung Electronics Co.*, 2018 WL 5630585 (D. Del. Oct 31, 2018). (D.I. 12 at 10). There, I held that allegations directed to unidentified products failed to meet the pleading standard because the plaintiff alleged no facts articulating how those products infringed the patents-in-suit. *Promos*, 2018 WL 5630585 at *4 ("Where an accused infringing product is not identified by name, the plaintiff must allege how the accused infringing class of products infringe the asserted patents."). Netflix urges a similar result here.

Netflix's reliance on *Promos* is inapposite. I held that the plaintiff's allegations failed to provide fair notice because they were directed to a "broad class" of unnamed products. *Id.* By

3

contrast, as explained above, Robocast specifically directed its allegations to the products and features it alleges have infringed (the "Netflix Internet platform" and its associated "automated playlists"). This is enough for identification purposes; Robocast need not provide, as Netflix incorrectly insists that it must, "websites, images, or other support." (D.I. 19 at 2). Because Robocast sufficiently identifies the accused products and features, it is not required to demonstrate how those products and features infringe. Even if it were so required, however, Robocast's Complaint would pass muster, as Robocast alleges facts articulating the ways in which Netflix's technology infringes the asserted patents.[1] (*See, e.g.*, D.I. 1 at 14-15).

Netflix also argues that in contrast to the "simple" mechanical device technology involved in the asserted patents in *Disc Disease*, 888 F.3d at 1260, the complex software-based technology at issue here suggests a higher threshold for providing fair notice. (D.I. 19 at 2). Netflix points to *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021), in which the Federal Circuit recognized that "the complexity of the technology" is a factor in assessing the sufficiency of allegations. *Id.* at 1352-53. Whether the technology in this case can be classified as simple or complex is immaterial here, as I find that other aspects of Robocast's Complaint—such as the identifications and factual allegations described above—provide the "fair notice" that lies at the heart of the Rule 12(b)(6) inquiry.

---

[1] Robocast has not specified in its Complaint that Netflix's allegedly infringing activity occurred during the enforceable term of each of the asserted patents. Contrary to Netflix's assertions (*e.g.*, D.I. 12 at 11), this omission is not fatal to Robocast. Viewing the factual allegations in the Complaint in the "light most favorable to the plaintiff," *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016), I can reasonably infer that the allegedly infringing acts occurred during the relevant damages period of each of the asserted patents (between March 7, 2016 and August 9, 2020 for the '451 patent, and between March 7, 2016 and September 2, 2017 for the '819 and '932 patents). (*See* D.I. 18 at 10).

4

For these reasons, I conclude that Robocast has sufficiently stated a claim for direct infringement. I therefore DENY Netflix's motion to dismiss with respect to Robocast's claims of direct infringement, with the exception of Robocast's vicarious liability claims, which I discuss below.

### B.      Vicarious Liability for Direct Infringement

All that Robocast alleges with respect to these claims is that Netflix is "vicariously liable for ... direct infringement by exercising control or direction over the practicing ... of at least claim 1 of the '451 patent ... conducted by an as yet unknown third party pursuant to a principal-agent relationship, a contractual relationship, a joint enterprise, or other like arrangement." (D.I. 1 at 17).

As a threshold matter, contrary to Robocast's assertions (D.I. 18 at 11), it is not "premature" to decide issues of vicarious liability for infringement under Rule 12(b)(6). Courts routinely decide the sufficiency of these sorts of claims at the motion to dismiss stage. *See, e.g., Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (joint infringement). Robocast's argument—that such decisions are generally premature "because they raise questions regarding claim construction and the infringement analysis necessarily based thereon" (D.I. 18 at 11)—is based on a misreading of *Nalco v. Chem–Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018). The *Nalco* court declined to resolve the plaintiff's claims at the Rule 12(b)(6) stage in part because the defendant's objections to those claims "boil[ed] down to objections to [Plaintiff's] proposed claim construction." *Id.* at 1349. Here, the parties have neither identified any claim construction issues nor advanced arguments dependent on such issues. I will therefore proceed to consider the sufficiency of Robocast's vicarious liability claims.

5

A claim of direct infringement based on vicarious liability requires "pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda*, 838 F.3d at 1339 (internal citations omitted). Robocast, however, offers no factual basis for its claim. Indeed, the Complaint fails to identify any third parties at all,[2] let alone allege facts supporting a relationship between those parties and Netflix.

For these reasons, I conclude that Robocast fails to allege sufficient facts to state a claim for vicarious liability. I therefore GRANT Netflix's motion to dismiss Robocast's vicarious liability claims.

### C. Indirect and Willful Infringement

Indirect infringement "requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 639 (2015) (inducement and contributory infringement). A determination of willful infringement requires a finding of "deliberate or intentional" infringement. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). The complaint must allege that the accused infringer knew of the asserted patent, and knowingly or intentionally infringed the patent after acquiring that knowledge. *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378-79 (Fed. Cir. 2020). With respect to both indirect and willful infringement claims, a plaintiff can meet the knowledge requirement

---

[2] In its Opposition Brief, Robocast argues that it has identified "registered account holders" as the relevant third parties. (D.I. 18 at 12). Although Robocast identifies "registered account holders" in its Complaint, it appears to do so with respect to its indirect infringement claims alone. (D.I. 1 at 15-16, 18).

6

by showing "willful blindness," which "requires the patentee to show not only that the accused subjectively believed that there was a high risk of infringement, but also that the accused took deliberate actions to avoid confirming infringement." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016) (inducement).

Netflix contends that Robocast has failed to state claims of indirect and willful infringement because (1) Robocast fails to plausibly allege pre-suit knowledge of the asserted patents; and (2) Robocast fails to plausibly allege that Netflix had knowledge of or intent to cause infringement. (D.I. 12 at 13). Because I conclude that Netflix's first argument prevails, I need not consider its second argument.

Robocast did not provide Netflix with actual notice of the asserted patents. (D.I. 12 at 4). Nevertheless, Robocast alleges several distinct ways in which Netflix obtained pre-suit knowledge. All are insufficient.

First, Robocast alleges that Netflix had notice of the '451 patent based on prior litigation between Microsoft and Robocast regarding that patent. (D.I. 1 at 12-14). That litigation concluded in 2014 and resulted in Microsoft licensing each of the patents-in-suit. (*Id.* at 13); *see Robocast, Inc. v. Microsoft Corp.*, Case No. 10-1055 (D. Del. Dec. 06, 2010). Robocast's theory centers upon two individuals, both affiliated with Netflix, who were affiliated with Microsoft while the Microsoft case was pending: Mr. Reed Hastings, Netflix founder, chairman, and CEO, who served on the Microsoft board from 2007 until 2012, and Mr. Brad Smith, Netflix board member since 2015, who served as Microsoft's general counsel starting in 2002 and held that position during the Microsoft litigation. (*Id.*). Robocast alleges that by holding these roles at Microsoft, Mr. Smith and Mr. Hastings obtained knowledge of the '451 patent. (*Id.*) It further alleges that Netflix, by virtue

7

of its relationship with these individuals, knew, should have known, or was willfully blind as to the existence of the '451 patent as well. (*Id.*).

This theory is speculative. Nowhere in the Complaint does Robocast allege that Mr. Smith or Mr. Hastings were involved in the Microsoft litigation such that it is plausible that they might have learned of the '451 patent; Robocast simply assumes that the role of general counsel and board member granted them that knowledge. Even if this assumption were correct, Robocast alleges no specific facts suggesting that the knowledge of Mr. Smith and Mr. Hastings can plausibly be imputed to Netflix.[3] As Netflix notes (D.I. 19 at 9), courts in this district have rejected similar imputation theories. *See ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 458-59 (D. Del. 2014) (insufficient pleading of pre-suit knowledge where plaintiff failed to allege specific facts "linking knowledge [defendant's counsel] may have acquired from her work at [third-party company and former patent owner] to her work at [defendant corporation]"). I do so again here.

Second, Robocast alleges that Netflix obtained knowledge of the '451 patent in 2016, when Netflix became a licensee of two patent portfolios that include patents or patent applications with citations to the '451 patent. (D.I. 1 at 13). Robocast, however, fails to sufficiently distinguish cases in which this court has dismissed a plaintiff's allegations of pre-suit knowledge based on similar licensing agreements with a third party. *See, e.g., EON Corp. IP Holdings LLC v. FLO TV Inc.*,

---

[3] Robocast contends that Netflix's argument to this effect, as well as its argument regarding the sufficiency of Robocast's allegations with respect to Mr. Smith's and Mr. Hastings's roles at Microsoft, constitute a disputation of the facts and are therefore improper to consider under Rule 12(b)(6). (D.I. 18 at 14-15). I disagree. As Netflix rightly notes (D.I. 18 at 7-8), its arguments go to the plausibility of Robocast's factual allegations and are therefore relevant to the Rule 12(b)(6) inquiry.

8

802 F. Supp. 2d 527 (D. Del. 2011). In *EON*, the court held that one such licensing agreement—in which the asserted patent was "one of fourteen" and "one of ninety-eight" patents cited as prior art on the face of the patents in the license agreements—established "too tenuous a link" between the asserted patent and defendants to sustain an allegation of knowledge. *Id.* at 533. Here, the alleged link is similarly attenuated, and without further information about the number of patents or patent applications included in the patent portfolios at issue—which Robocast does not provide—I am unable to conclude that Robocast has plausibly alleged pre-suit knowledge on this basis.

Robocast does not allege specific facts regarding Netflix's pre-suit knowledge of the '819 and '932 patents. Neither patent was involved in the Microsoft case. The '819 patent was issued in December of 2013, while the case was pending, but it was never asserted in that litigation; the '932 patent was issued in February of 2015, after the case had concluded. (*See* D.I. 1 at 3). Nevertheless, Robocast maintains that because these patents are continuations of the '451 parent, its allegations regarding Netflix's knowledge of the parent patent are sufficient to allege knowledge of the child patents as of the date of their issuance. (*Id.* at 3-4, 12-14; D.I. 18 at 17). Because I find that Robocast's allegations with respect to the '451 patent are insufficient, I need not address its arguments with respect to the other two patents.

I conclude that Robocast fails to allege sufficient facts to state a claim for indirect and willful infringement. I therefore GRANT Netflix's motion to dismiss Robocast's indirect and willful infringement claims.

9

## IV. CONCLUSION

For the reasons stated above, I will GRANT in part and DENY in part Netflix's motion to dismiss. (D.I. 11). Robocast's claims for vicarious liability for direct infringement, indirect infringement, and willful infringement are DISMISSED without prejudice. Per Robocast's request (D.I. 18 at 20), I grant Robocast leave to amend its Complaint within three weeks.

An appropriate order will follow.

*[signature]*
United States District Judge