**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBOCAST, INC., | ) | C.A. No. 22-305-JLH-CJB |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim Defendant, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| | ) | |
| NETFLIX, INC., | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim Plaintiff. | ) | |

**NETFLIX, INC.'S OPENING BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT AND TO EXCLUDE EXPERT OPINIONS**

RICHARDS, LAYTON & FINGER P.A.
Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
One Rodney Square
920 North King Street
Wilmington, DE  19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

*Attorneys for Defendant and Counterclaim Plaintiff Netflix, Inc.*

OF COUNSEL:

Tara D. Elliott (#4483)
Rachel Weiner Cohen
Ashley M. Fry
Diane E. Ghrist
Alessandra M. Schaszberger
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
(202) 637-2200

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 880-4500

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................................1

II.  NATURE AND STAGE OF PROCEEDINGS .................................................3

III. STATEMENT OF FACTS ..................................................................................3
  A.   The Asserted Patents .............................................................................3
  B.   Prosecution Of Robocast's Family Of Patents......................................6
  C.   Mr. Torres Admitted That His Declaration Contained False Information...............7
  D.   Robocast's Prior License Agreements ...................................................8
  E.   Netflix's Streaming Service And Autoplay Functionality During Post-Play .........8
  F.   Mr. Holzen's Unreliable Damages Opinions........................................10

IV.  SUMMARY OF ARGUMENTS.......................................................................11
  A.   Summary Judgment Is Warranted In Netflix's Favor..........................11
  B.   Mr. Holzen's Damages Opinions Should Be Excluded Under *Daubert* .............13

V.   LEGAL STANDARDS .....................................................................................13

VI.  ARGUMENT.....................................................................................................14
  A.   The Asserted Claims Are Patent Ineligible Under 35 U.S.C. § 101 ......................14
       1.   *Alice* Step One: '451 Patent Claim 1 Is Directed To An Abstract Idea.............15
       2.   *Alice* Step Two: '451 Patent Claim 1 Adds No Inventive Concept..........19
       3.   The Other Asserted Claims Are Likewise Abstract At Step One And Add Nothing Inventive At Step Two ................................21
  B.   Robocast Fails To Show Netflix Performed All Steps Of Any Asserted Method Claim ..........................................................23
       1.   Robocast Has Not Identified A Specific Act Of Alleged Infringement..............24
       2.   Robocast Has Not Demonstrated All Claim Limitations Are Met ...........27
  C.   The Asserted Claims Are Unenforceable Due To Inequitable Conduct...............38
       1.   The False Torres Declaration Is Per Se Material ......................................39
       2.   The Single Most Reasonable Inference Is That Mr. Torres Intended To Deceive The Patent Office....................42
       3.   The False Torres Declaration Renders The Asserted Claims Unenforceable...............43
  D.   Robocast's Expert's Damages Opinions Are Not Tied To Actual Allegedly Infringing Usage And Should Be Excluded.........................45
       1.   Mr. Holzen's Royalty Base Erroneously Includes Non-Infringing Use ...............46
       2.   Mr. Holzen's Royalty Rate Is Speculative and Unreliable ......................48

VII. CONCLUSION..................................................................................................50

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*,
  501 F.3d 1307 (Fed. Cir. 2007)..................................................................24

*Affinity Labs of Tex. v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)..................................................................23

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)..................................................................19

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)....................................................................11, 14, 21

*Altiris, inc. v. Symantec Corp.*,
  318 F.3d 1363 (Fed. Cir. 2003)..................................................................28

*Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*,
  768 F.3d 1185 (Fed. Cir. 2014)..................................................................38

*Angel Techs. Grp. LLC v. Meta Platforms, Inc.*,
  No. 22-2100, 2024 WL 4212196 (Fed. Cir. Sept. 17, 2024) ...........................15, 16

*Athletic Alts., Inc. v. Prince Mfg., Inc.*,
  73 F.3d 1573 (Fed. Cir. 1996)..................................................................33

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)..................................................................21

*Beteiro, LLC v. DraftKings Inc.*,
  104 F.4th 1350 (Fed. Cir. 2024) ..................................................................19

*Bluebonnet Internet Media Servs, LLC v. Pandora Media, LLC*,
  No. 2022-2215, 2024 WL 1338940 (Fed. Cir. Mar. 29, 2024)............................11, 17, 18, 20

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
  113 F.4th 1359 (Fed. Cir. Sept. 3, 2024) ..................................................................18, 20

*Cap. Sec. Sys., Inc. v. NCR Corp.*,
  725 F. App'x 952 (Fed. Cir. 2018) ..................................................................31

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  576 F.3d 1348 (Fed. Cir. 2009)..................................................................45, 47

*Care, Ltd. v. Laurain*,
  98 F.4th 1081 (Fed. Cir. 2024) ................................................................. 12, 38, 39

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................. 34

*Chewy, Inc. v. Int'l Bus. Machs. Corp.*,
  94 F.4th 1354 (Fed. Cir. 2024) ............................................................... 14, 19, 22

*Consol. Aluminum Corp. v. Foseco Int'l Ltd.*,
  910 F.2d 804 (Fed. Cir. 1990) .......................................................................... 13, 43

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014) ............................................................................. 22

*Cradle IP, LLC v. Texas Instruments, Inc.*,
  5 F. Supp. 3d 626 (D. Del. 2013), *aff'd*, 588 F. App'x 1000 (Fed. Cir. 2015) ...... 26

*Daubert v. Merrill Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................................. 13

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
  363 F.3d 1263 (Fed. Cir. 2004) ........................................................................... 33

*Eagle Harbor Holdings, LLC v. Ford Motor Co.*,
  No. 11-5503, 2015 WL 12670404 (W.D. Wash. Mar. 9, 2015) ........................... 50

*Ecolab Inc. v. Dubois Chems., Inc.*,
  No. 21-567-RGA, 2023 WL 7019266 (D. Del. Oct. 25, 2023) ........................... 48

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 13267 (Fed. Cir. 2016) ......................................................................... 17

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
  417 F. Supp. 2d 580 (D. Del. 2006) ..................................................................... 43

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002) ............................................................................................. 30

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010) ................................................................. 25, 26, 47

*Grace Instrument Indus., LLC v. Chandler Instruments Co.*,
  LLC, 57 F.4th 1001 (Fed. Cir. 2023) ................................................................... 29

*Guardant Health, Inc. v. Found. Med., Inc.*,
  No. 17-1616-LPS-CJB, 2020 WL 24775232 (D. Del. Jan. 7, 2020) ................... 43

iii

*Guardant Health, Inc. v. Found. Medicine, Inc.*,
No. 17-1616-LPS-CJB, 2020 WL 2477522 (D. Del. Jan. 7, 2020) ............................12, 43, 44

*Hawk Tech. Sys., LLC v. Castle Retail*,
LLC, 60 F.4th 1349 (Fed. Cir. 2023) ..........................................................................19, 21, 22

*In re Iwahashi*,
888 F.2d 1370 (Fed. Cir. 1989) ..................................................................................................29

*In re TLI Commc'ns Pat. Litig.*,
823 F.2d 607 (Fed. Cir. 2016) ..............................................................................................11, 17

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) .......................................................................................11, 15, 17

*Intell. Ventures 1 LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ..................................................................................................16

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................16, 18

*Intell. Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017) ..................................................................................................14

*Intellect Wireless, Inc. v. HTC Corp.*,
732 F.3d 1339 (Fed. Cir. 2013) .......................................................................................... *passim*

*INVT SPE LLC v. Int'l Trade Comm'n*,
46 F.4th 1361 (Fed. Cir. 2022) ..............................................................................................25, 47

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. 18-452-WCB, 2019 WL 2121395 (D. Del. May 15, 2019) ............................................44

*Koki Holdings Co. v. Kyocera Senco Indus. Tools, Inc.*,
No. 18-313-CFC, D.I. 182 (D. Del. Sept. 21, 2020) ................................................................50

*Lambda Optical Sols. LLC v. Alcatel-Lucent USA, Inc.*,
No. 10-cv-487-RGA-CJB, 2017 WL 4002148 (D. Del. Mar. 31, 2017) ...............................33

*Loral Fairchild Corp. v. Sony Corp.*,
181 F.3d 1313 (Fed. Cir. 1999) ..................................................................................................33

*Lucent Techs., Inc. v. Gateway, Inc.*,
543 F.3d 710 (Fed. Cir. 2008) .......................................................................................12, 24, 25

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ..................................................................................................45

*Mirror Worlds, LLC v. Apple Inc.*,
   692 F.3d 1351 (Fed. Cir. 2012).............................................................24, 25, 47

*MLC Intellectual Property, LLC v. Micron Tech., Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ....................................................................49

*Mobile Acuity Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024) ..................................................................21

*MyMail, Ltd. v. ooVoo, LLC*,
   2021 WL 3671364 (Fed. Cir. Aug. 19, 2021)...............................................22

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)................................................................................30, 31

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
   30 F.4th 1339 (Fed. Cir. 2022) ............................................................. *passim*

*Parallel Networks Licensing, LLC v. Microsoft Corp.*,
   777 F. App'x 489 (Fed. Cir. 2019) ...............................................................26

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ................................................................15, 19

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
   157 F.3d 866 (Fed. Cir. 1998)......................................................................37

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017).....................................................................16

*Robocast Inc. v. Microsoft Corp.*,
   No. 10-1055-RGA (D. Del. Feb. 13, 2013), D.I. 250 ...............................41, 42

*Robocast, Inc. v. Apple Inc.*,
   39 F. Supp. 3d 552 (D. Del. 2014) .........................................................43, 44

*Rohm & Haas Co. v. Crystal Chem. Co.*,
   722 F.2d 1556 (Fed. Cir. 1983)..............................................................40, 41

*Schneider ex rel. Estate of Schneider v. Fried*,
   320 F.3d 396 (3d Cir. 2003)........................................................................14

*Therasense, Inc. v. Becton, Dickinson & Co*,
   649 F.3d 1276 (Fed. Cir. 2011)......................................................12, 38, 39, 41

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019)..............................................................17, 21

*Trinity Info Media, LLC v. Covalent, Inc.*,
  72 F.4th 1355 (Fed. Cir. 2023) ...................................................................21

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
  LLC, 874 F.3d 1329 (Fed. Cir. 2017) .......................................................21

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
  659 F.3d 1376 (Fed. Cir. 2011) .................................................................29

*U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*,
  505 F.3d 1371 (Fed. Cir. 2007) .................................................................27

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019) .................................................................17

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) .................................................................21

*Zapfraud, Inc. v. FireEye, Inc.*,
  No. 19-1690-CFC, 2020 WL 6822972 (D. Del. Nov. 20, 2020) .....................16, 17

## STATUTES

35 U.S.C. § 284 ..........................................................................................45

35 U.S.C. § 286 ..........................................................................................10

## RULES

Fed. R. Civ. P. 56(a) ...................................................................................13

Fed. R. Civ. P. 56(c)(1) ...............................................................................13

## I.    INTRODUCTION

Robocast's assertion of three long-expired patents should proceed no further. The Court already dismissed Robocast's vicarious liability claims for direct infringement, and indirect and willful infringement based on Robocast's failure to allege pre-suit or pre-expiration knowledge of the patents. D.I. 20. Only Robocast's direct infringement claims remain. Now, over 2.5 years into this case, the parties' extensive fact and expert discovery confirms that Robocast's case is meritless and compels dismissal.

Robocast cannot prevail because it cannot show: (1) what Robocast purportedly "invented" or that its claims are patent eligible in light of Federal Circuit case law invalidating similarly abstract claims; (2) how and when Netflix's streaming service performed all steps of any asserted method claim; and (3) that the claims are enforceable in light of the inventor's admittedly false declaration submitted to the Patent Office to antedate prior art. The undisputed record demonstrates that there are no genuine issues of material fact that preclude summary judgment for Netflix on three independent grounds.

First, the intrinsic evidence demonstrates that the claims are directed to the abstract idea of collecting, organizing, and automatically displaying content—tasks that all can be accomplished manually. The patents state that generic, off-the-shelf computer components can carry out that idea to reduce user clicks—precisely the type of claims the Federal Circuit has repeatedly found abstract. The results-oriented claims and specification fail to disclose *how* the content is obtained or displayed or identify *how* they purportedly improve computer functionality. The intrinsic evidence alone establishes that the claims are patent ineligible.

Second, no reasonable jury could find infringement. Because all of the asserted claims are method claims, Robocast must show specific instances of alleged infringement, i.e., actual use of the accused functionality in an allegedly infringing way. But Robocast has not identified a specific

time the accused functionality was allegedly used to perform all the steps of any asserted method claim, let alone during the alleged damages window.  In fact, Robocast's technical expert, Kevin Almeroth, Ph.D., and damages expert, Stephen Holzen, both conceded that ***they did not identify a specific infringing act***.  And while Dr. Almeroth purports to cite evidence that the Netflix Service "comprises a method" or allegedly is capable of performing the claimed steps, mere capability is insufficient.  That flaw is fatal to Robocast's case.  Moreover, there is no evidence that the alleged use of the accused functionality meets either (1) the "show structure of nodes" limitation under either party's proposed construction; or (2) the "plurality of accessible resources" limitation under Defendants' proposed construction, as modified during the *Markman* hearing.

Third, Robocast's asserted claims are unenforceable because inventor Damon Torres submitted an indisputably false declaration to the Patent Office with the specific intent to induce the examiner to withdraw a rejection over the prior art during prosecution of an earlier-filed application in the Robocast patent family.  Affirmative misstatements to the Patent Office are per se material.  Neither Mr. Torres nor Robocast's counsel made any effort to cure this affirmative egregious misconduct that infects all three patents.

Summary judgment is warranted.  But if the Court permits the claims to proceed, Robocast's damages expert's opinions are fundamentally flawed and should be excluded in its entirety.  Mr. Holzen seeks to tell the jury that to license three U.S. patents for less than 4.5 years, Netflix would have paid ██████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████.  When opining that Netflix would have agreed to pay ████████████████ to use this elective functionality, Mr. Holzen includes all paid memberships, irrespective of use—erroneously treating the asserted method claims as system

claims.  Mr. Holzen also admittedly fails to quantify allegedly infringing versus non-infringing uses of the claimed methods during the alleged damages window.  While Mr. Holzen testified that quantification of allegedly infringing use is something Dr. Almeroth would have done, Dr. Almeroth in turn pointed back to Mr. Holzen for such a calculation.  Because Mr. Holzen's opinions have no reliable connection to any specific alleged acts of infringement or allegedly infringing usage of the autoplay functionality in the alleged damages window, his opinions are contrary to law and should be excluded.

## II.    NATURE AND STAGE OF PROCEEDINGS

Netflix launched the accused functionality in August 2012, as Robocast's lawsuits against Microsoft, Corp. ("Microsoft") and Apple, Inc. ("Apple") were pending.  After delaying a decade, Robocast sued Netflix on March 7, 2022, for allegedly infringing long-expired U.S. Patent Nos. 7,155,451 (the "'451 patent"), 8,606,819 (the "'819 patent"), and 8,965,932 (the "'932 patent") (collectively, the "Asserted Patents").  D.I. 1.  The Court dismissed Robocast's vicarious liability claims for direct infringement, and indirect and willful infringement claims on November 14, 2022.  D.I. 20.  Only Robocast's direct infringement claims remain.

Fact discovery closed on May 13, 2024 and expert discovery closed on August 29.  D.I. 266.  Robocast narrowed to ten claims: 1, 25, 38, and 41 of the '451 patent; 1 of the '819 patent; and 1, 13, 25, 27, and 31 of the '932 patent (collectively, the "Asserted Claims").  The Court held a claim construction hearing on September 5.  D.I. 303.  Trial is set for March 3, 2025.  D.I. 47.

## III.    STATEMENT OF FACTS

### A.    The Asserted Patents

The Asserted Patents claim methods for collecting content and organizing that content for automatic display.  *See, e.g.*, '451 patent, Abstract, 2:51-64, 3:22-31, 10:59-11:12, 17:62-18:11.

All three patents share a common specification.[1]  The '451 patent, titled "Automated Browsing System for Publishers and Users on Networks Serving Internet and Remote Devices," issued in 2006.  SOF 1.1.  The '819 and '932 patents, titled "Automated Content Scheduler and Displayer," issued in 2013 and 2015, respectively.  Mr. Torres, Robocast's founder and CEO, is the sole named inventor.  SOF 1.2-1.3.

In the mid-1990s, the World Wide Web had just emerged, making information increasingly accessible to users over web browsers.  To "access services, information, and entertainment on the Web, a user must make certain choices, position the mouse pointer and click the mouse buttons." '451 patent, 5:51-54.  "Alternatively, a user may type in a URL or access a bookmark to visit a favorite search engine," or "access a collection of 'channels' of 'push content' … and sit back for a few seconds to view an animated presentation of a specific publisher's offerings."  *Id.* at 5:60-66.  "[T]hese methods typically require a significant amount of user effort and decision-making to drive the web surfing experience."  *Id.* at 6:2-4.

The purported solution was to "automate various tasks that are currently accomplished manually," by "creat[ing] a show structure" of either local or Internet-based resources and "display[ing] the relevant information at a predetermined rate."  *Id.* at 18:5-8; *id.* at 3:11-13 ("[T]he invention may automate a number of the decisions that a user makes in viewing a plurality of resources."); *id.* at 8:27-31 (a "show structure of URLs" can be "manually collected by the user"); *see also id.* at 5:51-6:4; SOF 1.9.  In particular, the alleged invention is a "presentation software" that allowed for "[a] triggering event, such as mouse click on a single 'link'" to "commence[] the presentation of a series of resources instead of one resource at a time."  *Id.* at 2:51-55.  "This structure allows access to one or several topics of information from several sources in a continuous

---

[1] All citations are to the '451 patent specification unless otherwise indicated.

arrangement," including "multimedia data such as audio, video, graphics and text that together define a presentation show to a user." *Id.* at 2:60-64.

The specification further underscores that the claimed invention is meant to allow user decision-making to be "optional," and thus user decision-making is "not inhibited." *Id.* at Abstract, 3:14-17; SOF 1.8. In other words, the claims are merely an alternative way, using a computer as a tool instead of relying on a human, to collect URLs, create a playlist of content, and view each piece of content on the list, and thereby "drive the web surfing experience." *Id.* at 6:2-4; *see id.* at 3:38-42 ("A user may select and organize content from a variety of sources by several methods including a bookmark list, a list of search results and through the creation of a structure of nodes by a 'drag-and-drop' technique.").

Claim 1 of the '451 patent recites:

> **1.** A method for displaying on a user's computer, content derived from a plurality of resources in an organized arrangement comprising the steps of:
>
> > creating a show structure of nodes, each node identifying a resource from a plurality of accessible resources;
> >
> > without requiring user input, automatically accessing a plurality of said resources each of said resources identified by each of said nodes; and
> >
> > displaying a content corresponding to each of said resources automatically in accordance with said show structure, wherein said step of creating further comprises the step of providing an interactively variable duration information, representing the duration within which a corresponding content to said resource is being displayed so as to enable a user to vary said duration.

The Asserted Claims can be performed using conventional computer technology; indeed, "the user requires no special hardware to use this invention," and any "operating system," "browser," and "cache memory" can be used. *Id.* at 6:16-24, 6:25-59 (citing Fig. 2); SOF 1.10. The specification describes using off-the-shelf software such as Windows 95™ and Netscape

Navigator™ as an operating system and browser that can be used to perform the asserted claims. *Id.* at 6:40-42.  It describes using well-known computer network protocols for transferring data to be accessed by the browser, such as the "Hypertext Transfer Protocol (HTTP)" and "File Transfer Protocol (FTP)."  *Id.* at 6:49-52.  The specification also explains that the content delivered to the browser for the user consume can be viewed on "Quicktime," or other "front ends for several flavors of database applications."  *Id.* at 9:16-20.

### B.    Prosecution Of Robocast's Family Of Patents

On September 3, 1996, Mr. Torres submitted U.S. Provisional Application No. 60/025,360 (the "'360 provisional") to the Patent Office.  Ex. 1 at Cover; Ex. 2 at Cover; Ex. 3 at Cover.  On September 2, 1997, he submitted U.S. Patent Application No. 08/922,063 (the "'063 application"). Ex. 1 at Cover; Ex. 2 at Cover; Ex. 3 at Cover.  The Asserted Patents claim priority from the '360 provisional and the '063 application.  SOF 1.5-1.6; SOF 3.1.

During prosecution of the '063 application, the examiner twice rejected the sole pending claim over the prior art combination of U.S. Patent Nos. 5,809,247 ("Richardson") and 5,796,952 ("Davis").  SOF 3.3; Ex. 14 at 73, 87-90.  Richardson's priority date is July 22, 1996.  *Id.*  Mr. Torres submitted a declaration on November 11, 1999, pursuant to 37 C.F.R. § 1.131, aimed to antedate Richardson (the "Torres Declaration").  SOF 3.4.  Mr. Torres represented that he "conceived in the United States the invention claimed in the above-identified patent application prior to July 22, 1996," and attached as Exhibit A "a copy of a letter that was faxed to a software consultant, Jon Hertzig, prior to the July 22, 1996 date" (the "Hertzig Letter") as corroborating evidence.  SOF 3.5-SOF 3.6.  The Hertzig Letter on its face says "via fax."  SOF 3.7.  Neither the Torres Declaration nor the Hertzig Letter included the date of the alleged transmission of the purported fax.  Ex. 14 at 106.  Upon review, the examiner noted that the Hertzig Letter "doesn't include any specifics," and "at best … shows some evidence of conception of a web-based

'interactive slideshow.'" *Id.* at 121.  The examiner then rejected the pending claims over other prior art.  *Id.* at 121-122..  Mr. Torres subsequently abandoned the '063 application and instead pursued a series of continuation applications claiming priority from the '063 application and '360 provisional, including the Asserted Patents.  *Id.* at 184.

    **C.    Mr. Torres Admitted That His Declaration Contained False Information**

When deposed in prior litigation, ████████████████████████████████████ ████████████████████████████████████████████████ SOF 3.8-3.9; Ex. 5 at ¶ 105; Ex. 23 at 180:6-182:11. ████████████████████████████ ████████████████████████ Thus, the Torres Declaration, along with the Hertzig Letter, that represented the Hertzig Letter was faxed to Mr. Torres was false.  SOF 3.10-3.11.  Even after that unmistakable concession, neither Mr. Torres, his prosecution counsel, nor his litigation counsel made any attempt to cure the false statements in the Torres Declaration to the Patent Office even though the applications that issued as the '819 and '932 patents were still pending.  SOF 3.12-3.17.  As Robocast's counsel acknowledged to the Court in prior related litigations, a false declaration "screams intent" to deceive.  SOF 3.18-3.20.

In Interrogatory Nos. 11, 17 and 19, Netflix sought Robocast's positions on why the Asserted Patents are enforceable, including in light of Robocast's admittedly false statements to the Patent Office.  SOF 3.21.  Robocast failed to provide *any* purported explanation from Mr. Torres for his false statements to the Patent Office.[2]  SOF 3.22.  Instead, Robocast sought to sidestep the issue, stating that the Torres Declaration was not material and not relied on by the examiner.  SOF 3.23-3.25.

---

[2] There are other misstatements in the Torres Declaration and Hertzig Letter but the Court need not reach those issues to grant Netflix's motion.  Should the case proceed to trial, Netflix intends to present additional misconduct to support its claims of inequitable conduct.

### D.    Robocast's Prior License Agreements

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████  ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

### E.    Netflix's Streaming Service And Autoplay Functionality During Post-Play

Netflix's subscription-based service allows members to stream TV shows and movies. SOF 2.1.  There is no dispute that Netflix can be used without using the accused autoplay functionality during Post-Play (the "Accused Functionality").  SOF 2.6.  Robocast's damages expert even acknowledged that Netflix achieved "considerable success" before first introducing the Accused Functionality in August 2012.  *See, e.g.*, Ex. 37; Ex. 7 at ¶ 31; Ex. 24 at 83:5-7. Subscribers did not sign up for the Netflix Service because of the Accused Functionality, nor has Robocast or its experts identified a single subscriber who continued their subscription due to the Accused Functionality.  Ex. 24 at 99:18-100:2.  Rather, Netflix's success is due to its award-

winning content and its business model that provides unlimited content on demand at one low price. Ex. 7 at ¶¶ 33-36, 39, 139. Netflix's success also benefits from Netflix's own non-accused algorithms used to recommend titles to a subscriber, including methods of matching content to subscriber interests and profiles. Ex. 7 at ¶ 61.

Titles are made available to Netflix members through their Netflix subscriptions. SOF 2.12. ███████████████████████████████████████████████████████████ ███████████████████████████████. SOF 2.13. ██████████████████████ ██████████████████████████████████ SOF 2.14-2.15. When a subscriber nears the end of a currently playing video (e.g., movie or episode), a subscriber may encounter a Post-Play experience, which is a specific user interface ("UI") state. SOF 2.16. ███████ ████████████████████████████████████████████████████████████ ████████████████████████████ SOF 2.17. For instance, ████████████ ████████████████████████████████████████████████████████ SOF 2.18. █████████████████████ Netflix's own algorithms to determine what title will be shown next. Exs. 47-49; Ex. 9 at ¶¶ 87-89. ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████. Ex. 50; Ex. 9 at ¶¶ 124, 193; Ex. 4 at ¶¶ 127, 129. For instance, in the "Next Episode" Post-Play experience, ██████████████████████ ███████████████████████████████████████████████. Ex. 4 at ¶¶ 160-61, 167-68; SOF 2.26.

Robocast does not accuse all Post-Play experiences of infringement. Only a subset of Post-Play experiences is capable of "[a]utoplay[ing a] title, episode, or video after countdown," and

other Post-Play experiences never autoplay, such as recommendations.  SOF 2.7.  Since launch and through the alleged damages period, there were Post-Play experiences that did not include the Accused Functionality and thus are indisputably non-infringing.  Exs. 39-42; SOF 2.6-2.8.  And where the Accused Functionality is present, there is not necessarily an allegedly infringing act (e.g., when a user manually clicks to advance).  SOF 2.9.  Subscribers have always been able to avoid autoplay by clicking on a thumbnail to immediately play the next video.  *Id*.  There is no dispute that the Netflix Service does not always allegedly infringe, Post-Play experiences do not always allegedly infringe, and even the existence of the Accused Functionality during Post-Play does not always allegedly infringe.  SOF 2.6-2.10.  Even Dr. Almeroth recognizes that his opinions are not "premised on the notion that every single instance of a Post-Play experience that involves autoplay would be infringing."  SOF 2.8.  Yet, nowhere has Robocast or Dr. Almeroth set forth how or when the Accused Functionality, or Post-Play experience involving the Accused Functionality, ever satisfied each limitation of any Asserted Claim.  SOF 2.11.

### F.    Mr. Holzen's Unreliable Damages Opinions

Because Robocast delayed until March 2022 to file suit, the alleged damages window is at most between March 7, 2016 (six years before the filing date) and August 9, 2020 (latest alleged patent expiration date).  *See* 35 U.S.C. § 286.  ███████████████████████████████

█████████████████████████████████████████████ Ex. 7 at ¶¶ 18.

To get to this number, Mr. Holzen used as his royalty base ***all*** paid memberships in the alleged damages window, irrespective of whether the Accused Functionality was used.  Ex. 24 at 164:13-19.  But Mr. Holzen conceded that no one ever joined Netflix for the Accused Functionality (nor could he identify anyone that stayed with the Netflix Service because of the Accused Functionality).  *Id.* at 99:18-100:2.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████ *Id.* at 39:18-24, 46:1-9, 51:18-52:41; Ex. 23 at 19:9-20:2.  Rather, Mr. Holzen's alleged apportionment is based on two test documents containing a two-week snapshot of a test from 2014—two years before the alleged damages start date.  Ex. 7 at ¶¶ 68-69.  Mr. Holzen does not (and cannot) contend that this snapshot is representative of subscriber behavior for the alleged damages window.  Nor does he identify any evidence that suggests this snapshot represents U.S. subscriber behavior at that time, much less years later.  Moreover, neither Mr. Holzen nor Dr. Almeroth explain how that snapshot shows any of the limitations of any asserted method claim is met by a Netflix Service subscriber even once.

## IV.    SUMMARY OF ARGUMENTS

### A.    Summary Judgment Is Warranted In Netflix's Favor

1.    Because the Asserted Claims are directed to an abstract information manipulation concept without reciting anything more than that abstract idea, they are invalid as ineligible under 35 U.S.C. § 101.  Under step one of the two-step framework for determining patent eligibility set forth in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ("*Alice*"), all Asserted Claims are ineligible under 35 U.S.C. § 101 because they are directed to the abstract idea of collecting, organizing, and automatically displaying content.  It is well-established that "these types of methods of organizing digital media – which is what creating playlists based on user feedback is – are abstract ideas."  *Bluebonnet Internet Media Servs, LLC v. Pandora Media, LLC*, No. 2022-2215, 2024 WL 1338940, at *2 (Fed. Cir. Mar. 29, 2024) (citing *In re TLI Commc'ns Pat. Litig.*, 823 F.2d 607, 613 (Fed. Cir. 2016)).  Moreover, the specification expressly states that the claims purport to "automate various tasks that are currently accomplished manually" ('451 patent, 18:5-8)—which is a hallmark of abstraction.  *See, e.g.*, *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,

50 F.4th 1371, 1378 (Fed. Cir. 2022) ("*IBM*").  Under *Alice* step two, the Asserted Claims lack any inventive concept apart from the abstract idea, as they are performed using generic computer hardware and off-the-shelf software.

2.    There is no direct infringement as a matter of law because Robocast has not identified a specific act of infringement of any asserted method claim during the alleged damages window.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 723 (Fed. Cir. 2008).  ████

████████████████████████████████████████████████████

████████████████████████████    This omission is even more problematic in view of his concession that there are non-infringing uses of the Accused Functionality.  Because Robocast has failed to carry its burden of showing specific acts of infringement, summary judgment of no direct infringement is warranted.  In addition, the undisputed record shows that Netflix's system does not meet the "show structure of nodes" limitation under either party's proposed construction or the "plurality of accessible resources" under Defendants' proposed construction.

3.    The Asserted Patents are unenforceable due to inequitable conduct.  Mr. Torres engaged in "affirmative egregious misconduct" by submitting a false affidavit to the Patent Office in an earlier-related patent from which all of the Asserted Patents claim priority.  *See Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1344 (Fed. Cir. 2013).  With this conduct, "materiality is established per se, without need to prove its impact on the PTO's patentability determination." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1097 (Fed. Cir. 2024) (citing *Therasense, Inc. v. Becton, Dickinson & Co*, 649 F.3d 1276, 1290 (Fed. Cir. 2011)).  Mr. Torres has not disputed that the single most reasonable inference is that he specifically intended to deceive the Patent Office to overcome a prior art rejection.  Because Mr. Torres's inequitable conduct as to the earlier-related patent bears "an immediate and necessary relation' to the enforcement of the related patent," his

conduct infects the enforceability of all Asserted Patents.  *See Guardant Health, Inc. v. Found. Medicine, Inc.*, No. 17-1616-LPS-CJB, 2020 WL 2477522, at \*5 (D. Del. Jan. 7, 2020) (citing *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990)).

###### B.    Mr. Holzen's Damages Opinions Should Be Excluded Under *Daubert*

1.    If the Court does not grant summary judgment in Netflix's favor, Robocast's damages expert's opinions should be excluded as unreliable, untethered to the facts of the case, and contrary to law.  Even though all the asserted claims are method claims, Mr. Holzen, like Dr. Almeroth, treated the Netflix Service as a system merely capable of infringement.  Neither Dr. Almeroth nor Mr. Holzen quantified or reliably apportioned between allegedly infringing and non-infringing uses of the  Accused Functionality during the alleged damages window.  *See, e.g.*, *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022) (affirming exclusion of damages opinion as legally insufficient and unreliable where expert failed to "apportion" between infringing and non-infringing uses).  Mr. Holzen's royalty base is overstated because it is based on all paid memberships, irrespective of use.  His royalty rate is speculative because it is based on a two-week snapshot of member behavior in 2014—two years before the alleged damages window began to run.  Accordingly, Mr. Holzen's damages opinions should be excluded under Federal Rule of Evidence 702 and *Daubert*.

## V.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A non-moving party must support that a fact is genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited [by the opposing party] do not establish the absence … of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).

Federal Rule of Evidence 702 requires that expert testimony be "not only relevant, but reliable." *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Id.*

## VI.     ARGUMENT

### A.     The Asserted Claims Are Patent Ineligible Under 35 U.S.C. § 101

The familiar two-step *Alice* framework governs whether computer-based claims are ineligible under § 101. 573 U.S. at 217-27. At step one, the Court evaluates the claims' "focus" to determine whether "the claim's character as a whole is directed to" an abstract idea, such as commonplace human concepts or generic information-processing steps. *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (cleaned up). If so, at step two, the Court determines whether the other elements, individually or collectively, add "significantly more"— something "inventive"—apart from the abstract idea. *Alice*, 573 U.S. at 217-22. If the claims lack an inventive concept, they are ineligible. Summary judgment is appropriate where, as here, no disputed facts are material to the outcome. *See Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354, 1358 (Fed. Cir. 2024) (affirming summary judgment that claims for "identifying advertisements based on search results" are patent ineligible).

Here, the claims fail the *Alice* test as a matter of law because they (1) are directed to the abstract idea of collecting, organizing, and automatically displaying content—for example, allowing a user to create and present a playlist of songs or videos—and (2) require only generic computer components to carry out that idea. There are no material fact disputes: the claim language, specification, and Federal Circuit precedent compel this conclusion.

14

### 1.    *Alice* Step One: '451 Patent Claim 1 Is Directed To An Abstract Idea

At *Alice* step one, claim 1 of the '451 patent, like all Asserted Claims, is directed to the abstract idea of collecting, organizing, and automatically displaying content (e.g., a playlist of Internet content).  The claim recites this content-presentation concept at a high level of generality: on its face, it states that it is simply a "method for displaying on a user's computer, content derived from a plurality of resources in an organized arrangement" comprising generic steps for collecting and organizing the content ("creating a show structure of nodes") and then displaying it ("displaying a content corresponding to each of said resources automatically").[3]  Claim 1 is directed to an abstract idea for three reasons.

<u>First</u>, the claims merely seek to automate an otherwise manual or mental process—which is a "'telltale sign of abstraction.'"  *Angel Techs. Grp. LLC v. Meta Platforms, Inc.*, No. 22-2100, 2024 WL 4212196, at *4 (Fed. Cir. Sept. 17, 2024) (quoting *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021)); *see also IBM*, 50 F.4th at 1378 (claims that "automate" "manual[]" processes are abstract).  People have long played content in a certain order, including Internet content, by, for example, creating playlists of favorite songs or binge-watching episodes in a series in order.  The claims here, in highly generic terms, simply automate that process, collecting and organizing resources in a "show structure" and then automatically playing them.

Indeed, the specification in this case, in unequivocal terms, states that the purported invention is simply automating activities that the user would otherwise do manually.  The specification states that browsing the Internet can require a "significant amount of effort," as the user must decide what to watch and then click on it.  '451 patent, at 6:2-4.  The patent purports to

---

[3] The breadth of Robocast's infringement read reinforces this conclusion.  It asserts this claim in such broad fashion that it covers basic concepts such as playlists that automatically play collected content in order, like a mixtape or television programs.

do so by "automat[ing] … tasks that are currently accomplished manually"—collecting and organizing a list of resources (e.g., a list of Internet URLs for media content) and "play[ing] [them] automatically, going from one resource to the next" without requiring the user to press a button. '451 patent, at 18:7-8, Abstract; *see also, e.g.*, *id*. at 3:11-13 (patent "automate[s]" otherwise manual decisions); *supra* at Sec. III.A; SOF 1.8-1.10.  Because the purported invention does nothing more than automate manual processes—merely using computers to speed up that process or make it more efficient, it is abstract at step one.  *See, e.g.*, *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367, 1370 (Fed. Cir. 2015) ("claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" was insufficient to render the claims patent eligible as an improvement to computer functionality); *Zapfraud, Inc. v. FireEye, Inc.*, No. 19-1690-CFC, 2020 WL 6822972, at *6 (D. Del. Nov. 20, 2020) (finding claims abstract where "apart from 'generic computer-implemented steps, there is nothing in the claim [itself] that foreclose[s it] from being performed by a human[.]" (quoting *Intell. Ventures 1 LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016)), *adopted* 2021 WL 1138021 (D. Del. Mar, 25 2021).[4]

        Second, the claims recite no "specific means or method" for improving computer technology, and instead recite results-oriented information-processing steps for collecting, organizing, and displaying information—another indication of abstraction.  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).  As discussed, the claim language is highly generic.  And the specification expressly states that the alleged invention requires "no special hardware," ('451 patent, 6:16), and can be implemented with generic computer components like a "microprocessor," "a random access memory," a "modem," and a "keyboard" (*id.* at 6:25-39

---

[4] Robocast's Complaint confirms that the Asserted Claims seek to automate manual processes. *See, e.g.*, Compl. ¶¶ 10, 12 (alleging purported invention recites "automatically access[ing]" content "without requiring any input from the user" except "a single initial click").

(citing Fig. 2)) and off-the-shelf software (*id.* at 6:40-43) (claims can be implemented with Windows 95 and Netscape Navigator web browser). *Id.* at 6:40-43. Indeed, any "operating system," "browser," and "cache memory" can be used. *Id.* at 6:16-24; SOF 1.10. Thus, the Asserted Claims merely require routine computer and network technology to perform abstract information processing and automation steps, reinforcing that they are abstract. That is, the claims focus not on any "specific asserted improvement in computer capabilities" but instead on a "process that qualifies as an 'abstract idea' for which computers are invoked merely as tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 13267, 1335-36 (Fed. Cir. 2016).

Even if the claim makes the "web surfing experience" more efficient, it provides no advance in the technology itself. *See, e.g., IBM*, 50 F.4th at 1377 (ineligible claims for "improving a user's experience"); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366-67 (Fed. Cir. 2019) (ineligible claims for "converting" data into a "machine independent format" and "presenting results" were a "laudable" improvement); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1091-93 (Fed. Cir. 2019) (ineligible claims for analyzing and displaying financial data "more quickly").

<u>Third</u>, the Federal Circuit has repeatedly held patent ineligible analogous claims for collecting, organizing, and automatically displaying content. Because "[i]nformation as such is an intangible," claims for "collecting and analyzing information," and then "presenting the results" are directed to abstract ideas. *Elec. Power Grp.*, 830 F.3d at 1353-54. With respect to digital video and streaming content specifically, the Federal Circuit has explained that its "precedent establishes that these types of methods of organizing digital media—which is what creating playlists based on user feedback is—are abstract ideas." *Bluebonnet*, 2024 WL 1338940, at *2 (citing *In re TLI Commc'ns Pat. Litig.*, 823 F.2d at 613). That principle applies here too.

17

The Federal Circuit's decision in *Bluebonnet* is instructive.  There, the more detailed claims recited "creating playlists based on user feedback," using a "play-list generator adapted to automatically and dynamically generate at least one play-list based on rating information."  *Id.* at *1.  The Court held that the claims were directed to organizing digital media—an abstraction— and ineligible under § 101.  *Id.* at *2.  That logic applies here—the Asserted Claims likewise recite collecting, organizing, and automatically displaying digital content.  Just as *Bluebonnet*'s claims were drawn to "'merely adding computer functionality to increase the speed or efficiency of the process,'" Robocast's claims are aimed at providing "a significantly easier and more efficient way for computer users to be able to 'play' the Internet automatically," (D.I. 1 at ¶ 12), which "'does not confer patent eligibility on an otherwise abstract idea.'"  2024 WL 1338940, at *2 (quoting *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015)).  Here, the Asserted Claims are far broader and less detailed than those in *Bluebonnet* and, like the *Bluebonnet* claims, merely invoke the use of a computer as a tool to collect, organize, and display content.

Other cases are likewise on point.  In *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. Sept. 3, 2024), the Federal Circuit held that detailed claims reciting "automating the creation of a hierarchically arranged, template-based program guide" for video-on-demand systems and for "dynamic adjustment of an individualized electronic program guide" based on user consumption were abstract and ineligible.  113 F.4th at 1363-65.  The claims were directed to the abstract idea of "receiving metadata and organizing the display of video content" because they provided no "improved structure or function of a user interface" that would "require a specific technological solution to a technological problem."  *Id.* at 1368-69.  In *Chewy*, the Federal Circuit found ineligible claims that recited matching search results to related advertisements and formatting those advertisements for display because, "[e]ven accepting that the claimed invention

18

improves the specificity and relevancy of online advertisements, this 'is at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool.'" 94 F.4th at 1364-65 (citation omitted). There are numerous other examples. And in *Hawk Tech. Sys., LLC v. Castle Retail*, LLC, 60 F.4th 1349 (Fed. Cir. 2023), the claims for "receiving, displaying, converting, storing, and transmitting digital video" were ineligible despite detailed language reciting steps of "digitizing" and "converting" images from analog to a digital form. 60 F.4th at 1356-57; *see also Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (delivering user-selected media content to portable devices is abstract). The claims here are similar to, but even more generic and results-oriented, than claims the Federal Circuit has found ineligible and lacking in any technological improvements.

### 2. *Alice* Step Two: '451 Patent Claim 1 Adds No Inventive Concept

At *Alice*-step two, Robocast's claims add no inventive concept apart from the abstract idea. Claim 1 of the '451 patent does not require any specific computer components. And, as discussed below, the other claims are not materially different, merely specifying the media content (e.g., advertising) or other insignificant details—none of which adds an inventive concept. The specification admits that "[t]he user requires no special hardware to use this invention" ('451 patent, 6:16), and that the claims are to be performed on conventional computer hardware and software (*id.* at 6:16, 6:25-52, Fig. 2). The claims thus reflect generic computer functions for performing the abstract idea, not improving "the computer itself." *PersonalWeb*, 8 F.4th 1319; *see also Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1358 (Fed. Cir. 2024) ("Where … the specification 'describes the components and features listed in the claims generically,' it 'support[s] the conclusion that these components and features are conventional.'").

Indeed, the computer processing functions claimed here are even more generic than the ones for collecting, organizing, and displaying computer media content that the Federal Circuit

found non-inventive in *Bluebonnet*, *Broadband*, *Chewy*, and the other cases discussed.  *See*, *e.g.*,
*Bluebonnet*, 2024 WL 1338940, at *2 ("streaming media, rating media, generating a playlist, and
sharing a playlist" are non-inventive); *Broadband*, 113 F.4th 1359, 2024 WL 4018253, at *7, *9
("generating displays 'automatically from specific template types' based on data" from "content
providers"; "generating displays where categories are arranged based on relevance"; and "creating
new categories to encompass highly relevant content" are non-inventive).

Robocast's response to Netflix's Interrogatory No. 18, confirms there is no inventive
concept in the claims.  Ex. 31 at 254.  Rather than identify anything inventive in the claims,
Robocast deflected, stating that "Netflix has provided no such evidence" to "support[] a finding
that the additional elements were well-understood, routine, and conventional." *Id*.  But that is
incorrect.  Netflix has identified evidence providing the claims are abstract:  the claims and the
specification itself.  Indeed, the specification admits that the features of the Asserted Claims are
well-understood, routine, and conventional.  For instance, it explicitly states that "search engines
which index the Web allow these users to quickly locate URLs and their associated links," was
well-known by the mid-1990s. '451 patent, 1:66-2:1.  It further acknowledges that "content
aggregators" already existed that "collect and publish collections of Web Pages." *Id.* at 2:1-2.
Additionally, it concedes that "4.x" web browsers were already capable of "collecting user interest
profiles" that could "constantly update a specific set of topics, from news, sports and weather, to
financial and entertainment content." *Id.* at 2:23-26.  These are all features of the claims.  For
example, asserted claims 25 and 41 of the '451 patent and 25, 27, and 31 of the '932 patent each
require "an on-line search," like that accomplished by a search engine to locate content, and using
a content aggregator to collect that content into a "show structure of nodes." *See* '451 patent, cls.
25, 41; '932 patent, cls. 25, 27, 31.  In addition, asserted claims 25 of the '451 patent and 31 of the

'932 patent recite transmitting a "dynamic content," such as content like news, sports, and weather that constantly update. The Court need not look beyond the specification to confirm that the "claim elements or claimed combination is well-understood, routine, [and] conventional to a skilled artisan in the relevant field." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *see also*, *e.g.*, *Hawk*, 60 F.4th at 1359 ("[N]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").

Even viewed "as an ordered combination," the claims "ad[d] nothing ... not already present when the steps are considered separately." *Alice*, 573 U.S. at 225. The steps "yield[] only expected results" (i.e., collecting, organizing, and displaying content)—not anything inventive. *Universal Secure Registry LLC v. Apple Inc*., 10 F.4th 1342, 1352-53 (Fed. Cir. 2021); *see also Trading Techs*., 921 F.3d at 1093 (combining elements for collecting, organizing, and displaying information in a certain way is non-inventive); *Trinity Info Media, LLC v. Covalent, Inc*., 72 F.4th 1355, 1366 (Fed. Cir. 2023) (similar). The claims also add nothing inventive as they use generic, functional language without describing how the information is retrieved or displayed using any innovative technology. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017). Thus, claim 1 of the '451 patent adds nothing inventive and lacks patent-eligible subject matter under § 101 as a matter of law.

### 3.    The Other Asserted Claims Are Likewise Abstract At Step One And Add Nothing Inventive At Step Two

The other nine Asserted Claims are not materially different for purposes of § 101—they are directed to the same abstract idea as claim 1 of the '451 patent at step one and add nothing inventive at step two, as discussed below. Accordingly, the Court can appropriately treat claim 1 of the '451 patent as representative for the § 101 analysis. *See Mobile Acuity Ltd. v. Blippar Ltd.,*

110 F.4th 1280, 1290 (Fed. Cir. 2024) (court can use representative claim where there is no "distinctive significance" of any other claim limitations); *Content Extraction & Transmission LLC v. Wells Fargo Bank,* 776 F.3d 1343, 1348 (Fed. Cir. 2014) (court can use representative claims when asserted claims are "substantially similar and linked to the same abstract idea").  But the Asserted Claims are ineligible even when considered individually because they add nothing non-abstract or non-inventive, as discussed below.

Claim 25 of the '451 patent recites creating a "show structure" using an "on-line search" and generically recites inserting "dynamic content" into a "show structure," including targeted advertising messages, which itself is an abstraction.  *See Chewy*, 94 F.4th at 1365 (citing cases). Claim 38 allows for more than one resource to be displayed at the same time but fails to provide any technical specificity.  *See Hawk*, 60 F.4th at 1357 (ineligible claims for displaying multiple video streams).  Claim 41 adds a "specified period of time" in between the display of different pieces of content without more.  *See Elec. Pwr.*, 830 F.3d at 1353-54 (ineligible claims for concurrently displaying information).  Claim 1 of the '819 patent repeats the same limitations as claim 1 of the '451 patent, but additionally requires the presentation of "advertisement content," which is still abstract.  *See, e.g.*, *Chewy*, 94 F.4th at 1365 (citing cases).

The five '932 patent claims are nearly identical to the '451 and '819 patent claims.  Claim 1 of the '932 patent repeats the same limitations as claim 1 of the '451 patent, but requires that some of the "resources" be "network accessible resources," and that during presentation of a first resource, a second resource is being accessed, recited at a similarly high level of generality.  But even the examiner recognized that "queuing and caching" was well-known by September 1996. Ex. 15 at ROBOCAST000349.  Claim 13 of the '932 patent further recites a "play bar" to allow a user to vary duration of content.  But this is merely generic computer functionality that does not

save the claim from abstraction. *See MyMail, Ltd. v. ooVoo, LLC*, 2021 WL 3671364, at *7 (Fed. Cir. Aug. 19, 2021) (ineligible claims "display[ed] a toolbar" with "one or more buttons"). Claim 25 provides for duration information for the presented content, a feature of any form of content that is shown over time. Claim 27 specifies that the "accessing" step also comprises "downloading a file from a server residing within a communications network," which also reflects an abstract concept. *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1264 (Fed. Cir. 2016) ("The essential advance is not in the process of downloading applications, but only in the content of this particular application, and that is nothing but a functionally described display of information. That description does not cross out of the abstract idea category."). Last, claim 31 requires providing "dynamic content," similar to claim 25 of the '451 patent. Accordingly, apart from the limitations in claim 1 of the '451 patent, the limitations of the remaining Asserted Claims merely add minor tweaks that amount to other abstract concepts relating to types of content (dynamic or advertisement) to be displayed or known or non-technical features recited at a high level of abstraction (e.g., accessing resources during display of another resource, use of a play bar).

All Asserted Claims are directed to the abstract idea and add nothing inventive—and thus fail to pass muster under *Alice*. Netflix respectfully requests the Court grant summary judgment of patent ineligibility under § 101.

### B.    Robocast Fails To Show Netflix Performed All Steps Of Any Asserted Method Claim

Robocast has not met its burden of showing that any reasonable jury could find that the Netflix Service performed all steps of any asserted method claim. It is not surprising that Robocast cannot identify any specific act of alleged infringement because Robocast has been unable to explain the key claim limitations or set forth their metes and bounds for the Court or Netflix. That is contrary to the patent system's public notice function and raises concerns of indefiniteness.

23

Even if the Court were to first construe certain disputed claim terms, it is evident that Robocast is unable to identify specific instances of alleged infringement because the Netflix Service does not meet at least two claim limitations. First, under either parties' constructions, Robocast has not identified an alleged "show structure of nodes." Second, under the correct construction of "plurality of accessible resources" that requires resources to be directly accessible to an end user, the Netflix Service does not meet this limitation. For each of these independent reasons that implicate all asserted claims, there is no triable issue of fact for the jury. Summary judgment of no infringement is warranted.

### 1.    Robocast Has Not Identified A Specific Act Of Alleged Infringement

"[T]o prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *Lucent Techs.,* 543 F.3d at 723 (quoting *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)). Robocast did not argue that the Netflix Service necessarily infringes (it does not), but conceded that the Netflix Service and Post-Play are used in non-infringing ways. Ex. 23 at 77:5-14, 82:20-22; SOF 2.6-2.8. And there is no dispute that even when the accused autoplay functionality during Post-Play is present, there is no guarantee of any alleged infringement. Ex. 23 at 73:16-74:1; SOF 2.9-2.10. Indeed, Dr. Almeroth's infringement analysis was not "premised on the notion that every single instance of a Post-Play experience that involves autoplay would be infringing." Ex. 4 at ¶ 95; SOF 2.8. Because it is undisputed that the Netflix Service alone does not necessarily infringe, Robocast must instead identify specific instances of alleged infringement. *Lucent Techs.,* 543 F.3d at 723.

But Robocast has not identified any such instance, much less during the alleged damages window. *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1358 (Fed. Cir. 2012). Even Dr.

Almeroth admitted that he did not identify any specific acts of alleged infringement.  Ex. 23 at 125:1-22; SOF 2.11.  This is not surprising given that the Accused Functionality was introduced over a decade ago, and the alleged damages window concluded over four years ago (by August 2020).  On the other hand, Robocast should have been able to show "evidence of at least one instance" if it were "so common" and "so routine," as Robocast contends.  *See, e.g.*, *Lucent*, 543 F.3d 710, 723 (Fed. Cir. 2008).

Fatally, Dr. Almeroth treated the Asserted Claims as system claims that only require a showing that the Netflix Service is ***capable*** of allegedly infringing.  *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1371 (Fed. Cir. 2022) ("nonmethod claims describe capabilities whereas method claims require[] actual performance of each claimed step" (internal quotations omitted)); *see, e.g.*, Ex. 4 at ¶¶ 156, 180, 225, 249, 278, 310, 345, 377, 408, 455 (merely concluding that the Netflix Service "comprises a method" that allegedly infringes).  But the Asserted Claims (all method claims) are not drawn to capability, nor would that be sufficient to show infringement.  *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("[u]nless the claim language only requires the capacity to perform a particular claim element … it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement").

Neither Robocast nor Dr. Almeroth showed, as they must, how any "Post-Play experience that causes a video to autoplay" was ever used in a manner that satisfies all limitations of any Asserted Claim.  *Mirror Worlds*, 692 F.3d at 1358.  Dr. Almeroth failed to perform a limitation-by-limitation analysis for even one of the allegedly infringing Post-Play experiences involving autoplay.  SOF 2.20-22.  Instead, he mixed and matched different Post-Play experiences across claim limitations but failed to show that his collage of different Post-Play experiences ever occurs

in a given session (they do not). *See, e.g.*, Ex. 4 at ¶¶ 160-161 (discussing "Next Episode" for the '451 patent, claim 1[a]), 173 (discussing "███████" for the '451 patent, claim 1[b]); SOF 2.20-2.22. Dr. Almeroth also cherry picked disparate variables as allegedly satisfying various claim limitations in an inconsistent manner across his reports, but failed to show how this grab bag of variables was used to perform all steps of any Asserted Claim. SOF 2.23; *compare* Ex. 6 at ¶ 66 (alleging "███████" is the node's duration information), *with* Ex. 4 at ¶¶ 169, 178 (alleging ████████ provides the same).

The Federal Circuit has affirmed summary judgment of non-infringement under similar facts. For example, in *Fujitsu*, the Federal Circuit affirmed summary judgment where the patentee failed to establish a genuine factual dispute regarding direct infringement for a set of accused products because the patentee's "evidence show[ed] only that the accused products are capable of infringement." *Fujitsu*, 620 F.3d at 1329. Similarly, in *Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 F. App'x 489, 494 (Fed. Cir. 2019), the Federal Circuit found no indirect infringement where the patentee lacked evidence of any specific instance that a Microsoft customer directly infringed by using a Windows Server to perform all the steps of a claimed methods. Likewise, in *Cradle IP, LLC v. Texas Instruments, Inc.*, 5 F. Supp. 3d 626, 649 (D. Del. 2013), *aff'd*, 588 F. App'x 1000 (Fed. Cir. 2015), the district court granted summary judgment due to the patentee's "fail[ure] to identify evidence sufficient to raise a genuine issue of material fact as to infringement by the [accused] products." *Id.* The court reasoned that the "evidence shows that the products are, at best, capable of operating in an infringing manner" and that "[i]nfringement of a method claim, however, requires evidence of use." *Id.* This Court should follow suit and grant summary judgment of no infringement here as Robocast failed to identify any instance of alleged infringement of any asserted method claim (there is none).

## 2. Robocast Has Not Demonstrated All Claim Limitations Are Met

Robocast only alleges literal direct infringement but has not shown that the "show structure of nodes" or "plurality of accessible resources" limitations present in all Asserted Claims are met. *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1374–75 (Fed. Cir. 2007). Specifically, summary judgment of no infringement is warranted here as Robocast has failed to set forth evidence that (1) the "show structure of nodes" limitation is met under either party's proposed construction, and (2) the "plurality of accessible resources" limitation is met under Defendants' proposed construction, even if modified to encompass "local" resources.

Netflix briefly reiterates below the relevant claim construction disputes necessary to resolve this motion. The Court is able to grant summary judgment here, where there is a complete record because the parties' experts addressed alternative claim constructions in their expert reports. *See* Ex. 29 at 37:22-38:5 (requiring parties to address any alternative claim constructions in expert reports); Ex. 30 at 58:22-60:25 (deferring claim construction rulings to summary judgment).

### a. The Accused Functionality Does Not Meet The "Show Structure Of Nodes" Limitation

All of the Asserted Claims require a "show structure of nodes." *See, e.g.*, Ex. 1 at cl. 1 ("creating a show structure of nodes"). The parties' competing constructions are presented below.

| Robocast's Construction | Defendants' Construction |
|---|---|
| A structure that is arranged for the display of content by specifying one or more paths through a plurality of nodes. The show structure of nodes specifies the duration of any display. | One or more paths spanned through a set of nodes |

The parties' dispute turns on whether a show structure of nodes (containing at least two nodes) must first be created before any other steps of the claim are performed. D.I. 149 at 13-21. Under Defendants' proposed construction, it must. This is because the accessing and displaying

27

steps rely on the "show structure of nodes" for their antecedent bases, as the accessing step is directed to resources "identified by each of said nodes" of the show structure, and the displaying step is done "in accordance with said show structure." Ex. 30 at 50:2-51:8; *Altiris, inc. v. Symantec Corp.*, 318 F.3d 1363, 1369-70 (Fed. Cir. 2003) (requiring performing the claimed steps in order based on claim language and "[a]s a matter of logic"). The language "set of nodes" captures the concept that at least two nodes—which the parties agree is the minimum number required for a show structure (Ex. 30 at 56:16-22)—must be identified as part of the show structure at the creating step. *Id.* at 48:23-50:1.[5] The language "paths spanned through" the nodes clarifies that the path must be a direct connection from a first node to a second node, consistent with a show structure having at least two nodes. D.I. 149 at 16-17 (explaining that the patents' figures enumerate paths "spanned through" nodes of exemplary show structures of nodes).

Only Defendants' proposed construction makes it possible to discern the scope of the Asserted Claims, including what resources are identified by nodes of the show structure, and when and how a "show structure of nodes" is created. Ex. 30 at 49:1-50:1. By Robocast's own concession, its construction does not require that there be a set of at least two nodes as a result of the creating step, and therefore fails to provide clarity for the jury. *Id.* at 56:1-4 ("THE COURT: So you're saying the method can start being performed by playing one node and the second node can get decided after the – after it starts playing?" MR. RIZZI: "Absolutely."). Under Robocast's proposed construction, because no show structure is required to exist prior to the accessing and displaying steps, simply playing one video or song could fall within the scope of the claims. That interpretation is untenable under the claim language and common sense.

---

[5] At the *Markman* hearing, the Court inquired whether replacing "a set of nodes" with "at least two nodes" would be an appropriate construction. It would not resolve the dispute but it is Netflix's position that "at least two nodes *that are identified at creation*," as a further modification, would.

Robocast's expert conceded that the recited steps require an order by describing the Asserted Claims as an "algorithm."  Ex. 23 at 91:12-20 ("There's the hardware, and then the algorithms to implement the functionality that's articulated in the claims"); 93:1-12 ("it identifies a set of steps to perform as part of the method.  I don't know why that's – wouldn't be considered an algorithm").   In computer-related arts, the Federal Circuit's "preferred definition of 'algorithm'" is "[a] *fixed step-by-step procedure* for accomplishing a given result; usually a simplified procedure for solving a complex problem, also a full statement of a finite number of steps."  *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1384–85 (Fed. Cir. 2011) (emphasis added); *In re Iwahashi*, 888 F.2d 1370, 1374 (Fed. Cir. 1989).  Thus, there is no genuine dispute that the Asserted Claims recite ordered steps such that the show structure must be created before subsequent steps are performed.  D.I. 149 at 15-18.

Defendants' construction is also consistent with the Court's holding that "each of said nodes," (recited in the accessing step of claim 1 of the '451 patent), means "every one of the nodes in the show structure," because the "nodes" "refer[] back to the 'show structure of nodes.'"  Ex. 30 at 124:13-25.  The natural corollary to this holding is that the show structure must first be created to determine what nodes are part of that show structure, and when the accessing step (requiring accessing the resources of every one of the nodes in the show structure) is completed.

Robocast's construction fails to clarify claim scope and it fails to aid the jury in determining when there is any instance of infringement (i.e., when there is a show structure, what nodes are part of that show structure, and what resources and paths are part of that show structure).  In applying its construction, Robocast argues that there is no need to identify a second node when the resource of the first node is accessed and displayed.  *See, e.g.*, *id.* at 56:1-4.  Under this theory, potential infringers would be unable to discern what is or is not included in the claimed show

structure, particularly when playing a single song or video, undermining the public notice function of the patent system. *Grace Instrument Indus., LLC v. Chandler Instruments Co.*, LLC, 57 F.4th 1001, 1008 (Fed. Cir. 2023) (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)). Robocast also flouts the claim language that explicitly recites "creating show structure of ***nodes***"—nodes being plural, i.e., two or more.

Notwithstanding Robocast's conflicting positions—on the one hand, acknowledging that a created show structure must have at least two nodes, and on the other hand, arguing that one node is sufficient—Robocast's own expert's infringement read requires just one node at the creating step (insufficient to form a show structure), as the second node is only identified "as the [Post-Play] response is generated." *Compare* Ex. 30 at 56:25-57:2 ("Well, the arrangement has to be there. In other words, you have to have the arrangement of two nodes for that to be a show structure."), *with* Ex. 4 at ¶¶ 219, 452 ("Post-Play experiences are inherently dynamic because data representing them is returned shortly before they are displayed. Post-Play experiences include at most one item for autoplay, which is populated at this time and is inserted into the show structure as the response is generated.").

Robocast's arguments also highlight that its constructions for "show structure of nodes" and "nodes" have no clear boundaries. During the *Markman* hearing, Robocast was flatly unable to articulate what a "node" and a "show structure of nodes" are before ultimately admitting that these terms are merely "constructs." *See* Ex. 30 at 8:25-9:4 ("A core aspect of the patents … is what's referred to as a show structure of nodes, which is the construct the invention uses"), 13:5-22 ("the show structure is a concept of the node"), 17:17-18:3 (a node is "not a physical construct, it's not something that you just have to say these are the boundaries of the node"). But the definiteness requirement under 35 U.S.C. § 112, ¶ 2 requires that a patent's "boundaries should

30

be clear." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901-02 (2014) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 730 (2002)). Dr. Almeroth was similarly unable to articulate when alleged infringement occurs in the Netflix Service, only offering that "[i]t depends on when some of this was happening" and "it's essentially when all of the method steps have been performed." Ex. 23 at 124:9-25.

As Robocast cannot define the bounds of its claims with any kind of reasonable certainty or specificity, it should not be permitted to leverage its construction to expand the claims' scope for infringement. Accordingly, should the Court choose not to adopt Defendants' construction, summary judgment of indefiniteness is appropriate as, discussed above, the claims read in light of the specification fail to inform a skilled artisan of the scope of Robocast's purported invention and are thus indefinite. *See, e.g.*, *Cap. Sec. Sys., Inc. v. NCR Corp.*, 725 F. App'x 952, 958 (Fed. Cir. 2018) (affirming summary judgment of indefiniteness where plaintiff was unable to explain the scope of the "transactional operator" term or articulate why it encompassed some components but not others); *Nautilus*, 572 U.S. at 901-902.

Only Defendants' proposed construction is supported and faithful to the claim language, and should be adopted. Nevertheless, regardless of how the Court rules on the party's claim construction dispute for "show structure of nodes," summary judgment of non-infringement is warranted. As set forth below, the undisputed facts show that Robocast cannot meet its burden to show that the "show structure of nodes" limitation is satisfied under any proposed construction.

        (1)    <u>There Is No Genuine Dispute That Netflix Does Not Infringe Under Defendants' Proposed Construction</u>

The Netflix Service indisputably does not have a "show structure of nodes," if the Court agrees with Defendants that the "show structure of nodes" must be created before other recited steps (accessing and displaying) are performed. ███████████████

31

██████████████████████████████████████████████████████

██  SOF 2.16-2.17.  In other words, ████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████. Ex. 4 at ¶ 161; SOF

2.18-2.19.  As such there is at most only ever one alleged node when the accessing and displaying

steps occur.[6]  Therefore, the Netflix Service cannot infringe under Defendants' construction

because there is never a show structure with at least two nodes created prior to the accessing and

displaying steps.

Dr. Almeroth's reports confirmed how the Netflix System and Post-Play operate.  He only

identified the existence of a second node **after** ███████████████████████████████, and

importantly, **after** the resource identified by the first alleged node is displayed (i.e., the currently

playing video).   Ex. 4 at ¶¶ 100 (Post-Play occurs "[w]hen a viewable has nearly finished

playback"), 161 ("[T]wo nodes can be observed.  The first is the currently-playing episode, shown

in the picture-in-picture box, and the second is the episode which will play next."), 165 ("███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████." (emphasis added)); SOF 2.16-2.19.  And, Dr. Almeroth admitted that ████████████

████████████████████████ "███████████████████████████████."  Ex. 4 at

¶¶ 219, 452; SOF 2.17.  The only fair reading of Dr. Almeroth's analysis is that the second alleged

---

[6] Should the Court conclude that only a single node that is accessed and displayed satisfies the "show structure of nodes" limitation, that would open the door to prior art that reads on the Asserted Claims by virtue of the playing of a single video on QuickTime, which has been commercially sold since 1991 and is admitted prior art.  '451 patent, 9:15-20.

node is identified for creating the alleged show structure **subsequent** to the recited accessing and displaying steps. Ex. 4 at ¶ 161; SOF 2.19. This cannot satisfy Defendants' construction.

Dr. Almeroth provided only conclusory opinions in addressing Defendants' construction: "It is also my opinion that the Netflix Service infringes regardless of the construction of 'show structure of nodes,' because Netflix's Post-Play experience constitutes one or more paths spanned through a set of nodes where Post-Play specifies an autoplay item to follow the currently-playing video." Ex. 4 at ¶ 171. His unsupported conclusion, with no analysis, is insufficient to overcome summary judgment. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) ("It is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact"); *Lambda Optical Sols. LLC v. Alcatel-Lucent USA, Inc.*, No. 10-cv-487-RGA-CJB, 2017 WL 4002148, at *10 (D. Del. Mar. 31, 2017), *report and recommendation adopted*, No. 11-CV-00487-RGA-CJB, 2017 WL 4002141 (D. Del. Sept. 11, 2017) (expert's lack of explanation lends to the same result).

The facts here are analogous to those in *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313 (Fed. Cir. 1999), in which the Federal Circuit affirmed summary judgment of non-infringement, holding that under the proper claim construction, the asserted process claims were "limited to the performance of [their] steps in the order written" and finding that the accused process did not perform the steps in the order as construed. *Loral Fairchild*, 181 F.3d at 1322. Here, Defendants' construction for "show structure of nodes" requires that the creating step be performed prior to any subsequent steps. As discussed, there is no dispute that there only exists one alleged node before it is accessed and displayed, before the Post-Play Service identifies a

second alleged node to complete the alleged show structure.[7]  SOF 2.18-2.19.  Thus, as in *Loral Fairchild*, should the Court find the method claims must be performed in order as written, it should conclude that Netflix does not infringe any Asserted Claims as a matter of law.  Accordingly, like the Federal Circuit concluded in *Loral Fairchild*, if, as set forth in the claims, the "show structure of nodes" must be created before any other steps of the claim are performed, then there is no genuine issue of material fact that the Netflix Service does not create any "show structure of nodes."

(2)    *Robocast Has Failed To Carry Its Burden Under Its Own Proposed Construction*

Even if the Court were inclined to adopt Robocast's proposed construction, Robocast has failed to identify a "path through a plurality of nodes" or  any instance where a "show structure of nodes" is created.  Summary judgment is warranted based on this sheer "absence of evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In applying Robocast's proposed construction, Dr. Almeroth opined that the ▮▮▮▮▮▮ ▮▮▮▮▮ corresponds to the "path" of the "alleged show structure of nodes."  Ex. 4 at ¶ 168 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); *see id.* at ¶¶ 160 (similar), 167 (similar); SOF 2.24.  To support his contention that ▮▮▮▮▮▮▮▮▮ is the alleged path, Dr. Almeroth cited to a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the Next Episode Post-Play experience. Ex. 4 at ¶ 162; SOF 2.24.  And as Dr. Almeroth admitted, ▮▮▮▮▮▮▮▮▮▮▮

---

[7] Unable to dispute the facts or assert infringement under Defendants' construction, Dr. Almeroth asserts that Netflix's proposed construction is "new."  Ex. 6 at ¶ 82.  But this central dispute was fully briefed during claim construction. D.I. 149 at 13-21.  Dr. Almeroth's statement confirms that the parties' proposed constructions captures the key dispute, which is ripe for resolution.  *See Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996) (where the question of infringement "collapses to one of claim construction," it "is amenable to summary judgment").

████████████████████████████████. Ex. 4 at ¶ 163; SOF 2.26.  It does not identify "a path through a plurality of nodes" (i.e., *two* alleged nodes), which is required to satisfy Robocast's construction.  Nowhere did Dr. Almeroth identify any instance where a path, in the form of ████████ ████████████ exists or is created through *two* alleged nodes.  Robocast cannot survive summary judgment under its construction.

Even assuming that Dr. Almeroth could have sufficiently addressed Robocast's proposed construction (he does not), Dr. Almeroth never identified any instance of a created show structure that specifies "one or more paths through a plurality of nodes" (two or more nodes).  At best, he pointed to a ███████████" as █████████████████████████████████ █████████████" Ex. 4 at ¶ 162; SOF 2.25.  This example was not tied to any instance of alleged infringement or alleged infringing use of the Accused Functionality, much less during the alleged damages window.  Ex. 4 at ¶¶ 159-171; SOF 2.27.  Robocast thus cannot meet its burden of proof under its own proposed construction.  Therefore, summary judgment is warranted as a matter of law.

### b.    The Accused Functionality Does Not Meet The "Plurality Of Accessible Resources" Limitation

All of the Asserted Claims require a "plurality of accessible resources."  *See, e.g.*, Ex. 1 at cl. 1 ("each node identifying a resource from a plurality of accessible resources").  The parties' constructions are presented below, with the Defendants' construction modified by the parties at the *Markman* hearing presented in redline.[8]  Ex. 30 at 100:2-18; 106:15-24.

---

[8] The modification to Defendants' construction does not affect the parties' positions regarding infringement, as Robocast has not alleged infringement based on local resources.  Ex. 4 at ¶ 170.

| Robocast's Construction | Defendants' Construction |
|---|---|
| two or more resources accessible through a show structure of nodes[9] | multiple sources of information, each accessible to an end user ~~via the internet~~ |

Defendants' construction requires that the resources be "accessible" to end users (e.g., can be culled and collected). Under Defendants' construction, the term "plurality of accessible resources" does not encompass closed systems with "restricted resources stored on private databases or resources requiring content licenses prior to display" because such resources cannot be directly accessed by or displayed to an end user. D.I. 149 at 49; Ex. 30 at 100:19-101:16. As Netflix explained, the claim language requires that the "plurality of accessible resources" be accessible to an end user at the creating step, consistent with disclosed embodiments in the specification permitting the end user to access resources to "add, edit or cut a node from the structure that they're building." Ex. 30 at 98:20-100:1; '451 patent, 15:21-35 (describing RoboPublisher[10]). This is also consistent with Robocast's statements during the *Markman* hearing, describing the purpose of the Asserted Patents as "mak[ing] it far easier for end users to locate, retrieve and interact with internet content of interest … while maintaining the end user interactivity associated with traditional web browsing." Ex. 30 at 8:8-13. But in traditional web browsing, the end user directly accesses the resources that are displayed on their client device. Accordingly, the Court should adopt Defendant's construction.

As the Court recognized, the critical distinction between the parties' proposed constructions is whether the end-user is able to directly access the "resources." *Id.* at 100:19-

---

[9] Robocast's construction, when inputted into the claims, reads: "creating a show structure of nodes, each node identifying a resource from *two or more resources accessible through a show structure of nodes*." *See* D.I. 149 at 49. The Court should reject Robocast's circular construction.

[10] Robocast contends that its 1990-2000s service, which includes the RoboPublisher embodiment, is coextensive with the Asserted Claims. Ex. 6 at ¶¶ 882, 889, 959; Ex. 30 at 75:4-14.

101:18, 106:15-24.  If resolved in Defendants' favor, it is dispositive.  Robocast cannot show that the Netflix Service provides a "plurality of accessible resources," wherein the end user can access the resources, including during the creating step.  There is no dispute that the Netflix Service restricts content and requires subscriber authentication and a license for accessing each title.  As Mr. Holzen acknowledged, Netflix "operates through a 'paid-subscription model, which grants the user access to the platform's wide array of video entertainment options' in exchange for a subscription fee."  Ex. 7 at ¶ 34.  Dr. Almeroth also recognized that "Netflix's customers pay a monthly subscription *for access* to Netflix and then are able to stream content on various devices."  Ex. 4 at ¶ 94 (emphasis added).  Consistent with Robocast's experts, Dr. Rubin explained that accessing any resources on the Netflix Service requires communication with Netflix's backend services for the authentication step and the license request to occur.  Ex. 9 at ¶ 197.  Thus, there is no dispute that the alleged "resources" are not directly accessible to the end user for display.

Notably, Dr. Almeroth failed to separately apply the parties' competing constructions for "plurality of accessible resources," to the Accused Functionality.  Instead, he simply concluded that "[i]t is my opinion that the Netflix service practices this claim element regardless of the construction adopted for 'plurality of accessible resources' because the Netflix service makes available multiple sources of information, including multiple image, audio, and video assets enumerated in the video node and the manifest associated with a streaming session for a video node."  Ex. 4 at ¶ 170; SOF 2.28.  But this sole sentence in Dr. Almeroth's over 200-page opening report lacks any analysis as to how or why any alleged resource is an "accessible resource" to the computer end user, or subscriber.  Dr. Almeroth failed to explain how any evidence including Netflix's documents, source code, or testimony in this case, supports his conclusion.  Dr. Almeroth's conclusion has no basis in fact and thus cannot alone give rise to any genuine fact

dispute. *See Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) (affirming summary judgment where plaintiff's expert declarations and allegations regarding defendants' documents were "wholly conclusory" and "devoid of facts").

Indeed, the one document Dr. Almeroth cited relating to the "plurality of accessible resources" confirms there is no issue of material fact.  Ex. 4 at ¶ 170 (citing NFLX_0058242); SOF 2.29.  It shows that in the Netflix Service, ███████████████████ during playback, which ████████████████ and that ████████████ ███████████ through ████████████  Ex. 52; SOF 2.30.  Thus, under Defendants' construction, the Netflix Service does not "create[e] a show structure of nodes from a plurality of accessible resources," because no end user has direct access to any purported "resource" residing on Netflix's private network.  Accordingly, for this independent reason, the Court should grant summary judgment of non-infringement under the correct construction of this term, proposed by Defendants.

## C.    The Asserted Claims Are Unenforceable Due To Inequitable Conduct

A patent is unenforceable for inequitable conduct when "'clear and convincing evidence [shows] that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO.'"  *Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.*, 768 F.3d 1185, 1188-89 (Fed. Cir. 2014) (citation omitted)).  Courts typically apply a but-for materiality test.  *Therasense, Inc. v. Becton, Dickinson & Co*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  But where there is evidence demonstrating "affirmative egregious misconduct," such as a false affidavit, "materiality is established per se."  *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1097 (Fed. Cir. 2024) (citing *Therasense*, 649 F.3d at 1290); *see Intellect Wireless*, 732 F.3d at 1344.  As for prong two, "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'"  *Therasense*, 649 F.3d at 1290.

There can be no genuine dispute that the Asserted Patents are unenforceable due to inequitable conduct. The parties do not dispute that during the prosecution of the '063 application, Mr. Torres submitted a false declaration to the Patent Office specifically in an effort to deceive the Patent Office into allowing the claims of the '063 application. Robocast has offered no explanation for its affirmative egregious misconduct, nor has Mr. Torres, Robocast, or Robocast's prosecution or litigation counsel ever sought to cure this affirmative egregious conduct. Because the false declaration infects the enforceability of the Asserted Patents, each of which claims priority from the '063 application, summary judgment is appropriate on this independent ground.

### 1.     The False Torres Declaration Is Per Se Material

When a patent applicant "files a false affidavit and fails to cure the misconduct," it is considered an act of "affirmative egregious misconduct" before the Patent Office. *Intellect Wireless*, 732 F.3d at 1344. Such "affirmative egregious misconduct" satisfies the materiality prong per se, "without the need to prove its impact on the PTO's patentability determination." *Luv n' Care,* 98 F.4th at 1097 (citing *Therasense*, 649 F.3d at 1290).

Here, there is no dispute that the Torres Declaration and the supporting Hertzig Letter were false. SOF 3.6-3.7, 3.9-3.11. Thus, their submission was an act of affirmative egregious misconduct. Prior to their submission, the Patent Office had rejected all pending claims of the related '063 application over the Richardson prior art. The Torres Declaration and the Hertzig Letter purported to serve as evidence of an alleged conception date prior to the July 22, 1996 (the priority date of the Richardson patent) in an effort to antedate the Richardson reference:

> Attached Exhibit A, is a copy of a letter that was faxed to a software consultant, Jon Hertzig, prior to the July 22, 1996 date. The date on the letter has been redacted. The letter illustrates the conception of this invention. Briefly, the letter was written and sent by myself, Damon C. Torres, to Jon Hertzig, a tech writer, describing the invention as claimed in the above-identified patent application. With reference to the third and fourth paragraph of the letter, I describe my invention for users who are surfing sites to have a way to see more than one web page per click. The letter suggests means that are provided to "cue up many pages and have them automatically 'play' in your browser." Furthermore, such an automated software scheduler and player could "automate search results," "print dozens of pages on its own," and enable users to "pick from pages that were made especially as a sequence, like a story."

Ex. 14 at 103 (annotated); *see also* Ex. 14 at 106 (stating it was sent "Via fax"). But during discovery in the earlier *Apple* and *Microsoft* litigations, ████████████████████ ████████████████████████████████████████████ Mr. Torres confessed under oath:



SOF 3.9 (emphasis added). Robocast's counsel knew of this confession no later January 2013.[11]

████████████████████████████████████████ neither Mr. Torres nor his prosecution counsel Joseph Sofer made any attempt to cure these falsities despite having a duty of candor to the Patent Office under 37 C.F.R. § 1.56.

The facts here are analogous to those in *Intellect Wireless*. There, the Federal Circuit

---

[11] Irrespective of whether Mr. Sofer knew about Mr. Torres's misrepresentations to the Patent Office during the prior litigations, he indisputably knew about it since his depositions in this case. SOF 3.13, 3.16.

[12] There are several other issues surrounding the alleged Hertzig Letter, including whether the contents ever existed before the earliest available metadata for the document—March 24, 1999, but the Court need not address those issues to grant Netflix's motion for summary judgment.

affirmed a finding of per se materiality based on an applicant's submission of an "unmistakably false" declaration in an effort to overcome a prior art reference, that was never cured. *Intellect Wireless*, 732 F.3d at 1342.  The Federal Circuit explained that "[w]hen an applicant files a false declaration, we require that the applicant 'expressly advise the PTO of [the misrepresentation's] existence, stating specifically wherein it resides.'" *Id.* at 1343 (quoting *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983)).  In other words, the applicant must call the Patent Office's attention "to the untrue or misleading assertions sought to be overcome." *Id.* The Court affirmed a finding of per se materiality despite the patentee's assertion that the Patent Office did not rely on the false declaration in allowing its patent claims.  *Id.* at 1344.

Here, as in *Intellect Wireless*, Mr. Torres submitted an admittedly false declaration, claiming he had faxed a letter to Mr. Hertzig that evidenced an earlier date of conception of his alleged invention.  SOF 3.4-3.6, 3.9.  There is no dispute that (1) Mr. Torres never in fact sent any such letter to Mr. Hertzig via fax; (2) Mr. Torres's declaration to the Patent Office to overcome a prior art reference stating that he faxed the letter to Mr. Hertzig was false; and (3) this conduct was never called to the Patent Office's attention, even after Mr. Torres conceded that the declaration was false and all relevant counsel indisputably knew about that affirmative misstatement no later than during the course of the *Microsoft* and *Apple* litigations.  SOF 3.9-3.17.  And still further, Robocast lost its motion to strike and its motion for summary judgment of no inequitable conduct. SOF 3.20; *Robocast Inc. v. Microsoft Corp.*, No. 10-1055-RGA (D. Del. Feb. 13, 2013), D.I. 250; *Robocast Inc. v. Microsoft Corp.*, No. 10-1055-RGA (D. Del. Feb. 21, 2014), D.I. 499 .  Mr. Torres and Robocast's counsel continued to obfuscate the truth by failing to provide deposition testimony from Mr. Torres to the Patent Office as well as litigation documents concerning the Torres declaration.  SOF 3.17.  Where there was no "full disclosure" or "correction of the record" of the

false misrepresentation, the materiality prong was found to be met in *Intellect Wireless*. 732 F.3d at 1344. The same result is warranted here—Mr. Torres's false declaration and his subsequent failure to cure those falsehoods constitutes "the sort of 'affirmative act[] of egregious misconduct' that renders the misconduct 'material.'" *Id.* (quoting *Therasense*, 649 F.3d at 1292).

### 2. The Single Most Reasonable Inference Is That Mr. Torres Intended To Deceive The Patent Office

The Court should conclude that there is no issue of material fact that Mr. Torres acted with specific intent to deceive the Patent Office by submitting a declaration containing false evidence of an alleged conception date. *See Intellect Wireless*, 732 F.3d at 1345 ("Submission of an affidavit containing fabricated examples of actual reduction to practice in order to overcome a prior art reference raises a strong inference of intent to deceive." (citing *Rohm & Haas*, 722 F.2d at 1571)). Indeed, the Court in the prior litigation recognized, and Robocast's counsel conceded, that if Mr. Torres "made up this [Hertzig] letter in 1999, that screams intent to deceive." *Robocast Inc. v. Microsoft Corp.*, No. 10-1055-RGA (D. Del. July 19, 2013) (denying Robocast's motion to strike inequitable conduct defense), D.I. 251 at 30.

That Mr. Torres indisputably intended to deceive the Patent Office is further evidenced by his refusal to make any effort to cure his prior misrepresentations. SOF 3.17. And Robocast's counsel undeniably knew about the misstatements, which were extensively heard by Judge Andrews. SOF 3.12-3.13, 3.20. Yet neither Mr. Torres nor Robocast's counsel did anything to inform the Patent Office. SOF 3.17. Robocast's counsel neither told the Patent Office about the false declaration with respect to the '451 patent that was currently in litigation and subject to challenges to patent unenforceability that survived summary judgment, nor with respect to the then-pending continuation applications. SOF 3.14-3.17. This failure to cure is particularly troubling as Mr. Torres and Robocast's prosecution counsel continued to prosecute and receive

patents in the years after the conclusion of the Microsoft and Apple litigations.  SOF 3.14.  And each of those patents claimed priority from the '063 application—including the asserted '819 and '932 patents.  SOF 3.1-3.2.  That Mr. Torres and his counsel continued to hide the truth regarding Torres Declaration and the Hertzig Letter from the Patent Office supports that the most reasonable inference is that they specifically intended to deceive the Patent Office.  *See Intellect Wireless*, 732 F.3d at 1345-46.

Nowhere in any of its responses to Netflix's interrogatories relating to Robocast's inequitable conduct does Robocast provide *any* purported explanation from Mr. Torres for his false statements to the Patent Office.  SOF 3.21-3.25.  On this record there is no dispute or countervailing evidence to the single most reasonable inference—that Mr. Torres intended to deceive the Patent Office in an effort to hasten the issuance of a patent by avoiding rejections over the Richardson prior art.

### 3.    The False Torres Declaration Renders The Asserted Claims Unenforceable

Mr. Torres's inequitable conduct tainting the earlier '063 application renders unenforceable the '451, '819, and '932 patents, as "the inequitable conduct at issue bears 'an immediate and necessary relation' to the enforcement of the related patent."  *Guardant Health, Inc. v. Found. Medicine, Inc.*, No. 17-1616-LPS-CJB, 2020 WL 2477522, at *5 (D. Del. Jan. 7, 2020) (citing *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990)).

Under the doctrine of infectious unenforceability, "inequitable conduct associated with one patent may render a related patent unenforceable—so long as the inequitable conduct at issue bears 'an immediate and necessary relation' to the enforcement of the related patent."  *Guardant Health, Inc. v. Found. Med., Inc.*, No. 17-1616-LPS-CJB, 2020 WL 24775232, at *5 (D. Del. Jan. 7, 2020) (citing *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990)).  This

doctrine requires a showing that "'the inequitable conduct that occurred earlier in the chain [of issued patents] 'must be related to the targeted claims of the ultimately-issued patent or patents sought to be enforced.'" *Id.* (quoting *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 595 (D. Del. 2006)).  In the case of continuation patents, "if a patentee commits inequitable conduct during prosecution of one patent, then a later continuation patent will almost surely be found to bear an 'immediate and necessary relation' to the patent obtained by way of the inequitable conduct." *Guardant*, 2020 WL 2477522, at *10 (citing *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 571 (D. Del. 2014)); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 2121395, at *4 (D. Del. May 15, 2019)).  The "immediate and necessary relation" may also be established where the "patent-at-issue is linked to an infectious patent (or application) through a common claim of priority." *Id.* (citation omitted)).

Here, the issue is indisputable.  The Asserted Patents are each continuation patents of, and claim priority from, the tainted '063 application.  SOF 3.1-3.2.  And there is no dispute that Robocast is using the '063 application to establish a link in the chain of priority back to September 1996 for the Asserted Claims of the Asserted Patents.  SOF 3.1-3.2; Ex. 31 at 16-158.  Indeed, it was established as part of the prior *Microsoft* and *Apple* litigations that "if a patentee commits inequitable conduct during prosecution of one patent, then a later continuation patent will almost surely be found to bear an 'immediate and necessary relation' to the patent obtained by way of the inequitable conduct." *Guardant*, 2020 WL 2477522, at *10 (citing *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 571 (D. Del. 2014)).  As courts in this district recognize, "this is in significant part because continuation applications are understood to 'relate to the same invention.'" *Id.*

The claims of the '063 application are intimately related to the Asserted Patents as all claims relate to automatically displaying content derived from multiple resources (i.e., a "web

page, an executable file, or a data file" (D.I. 101 at 2:57-58)).  For example, claim 1 of the '063 application recited "an automated content displayer which is used to sequentially presents[sic] information derived from selected sites."  Ex. 14 at 30.  This is no different from the claimed methods of the '451 patent which "display[] on a user's computer, content derived from a plurality of resources in an organized arrangement."  D.I. 1-1 at cl. 1.  As such, there is a "significant overlap in the content" of the Asserted Patents.  *Guardant*, 2020 WL 2477522, at \*9.

In view of the undisputed close connection between the '063 application and the Asserted Patents, Mr. Torres's submission of his false declaration during the prosecution of the '063 application infected the Asserted Patents in this case.  There is no genuine dispute that the Asserted Patents are unenforceable due to inequitable conduct and summary judgment is warranted.

### D.    Robocast's Expert's Damages Opinions Are Not Tied To Actual Allegedly Infringing Usage And Should Be Excluded

Summary judgment is warranted.  However, if the Court permits Robocast's claims to continue, Robocast's damages expert's opinions are fundamentally flawed and should be excluded in their entirety.

Where infringement is shown, a patentee may be entitled to "damages adequate to compensate for the infringement … for the use made of the invention by the infringer."  35 U.S.C. § 284.  A "damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers" because "this is what the parties to the hypothetical negotiation would have considered."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009).  Where, as here, only method claims are asserted, "the damages base should be limited to products that were actually used to perform the claimed method."  *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022); *see Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1359 (Fed. Cir. 2009) (patentee "can only receive infringement

45

damages on those devices that actually performed the patented method during the relevant infringement period"). Further, the "[d]amages [for asserted method claims] should be apportioned to separate out non-infringing uses." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1357 (Fed. Cir. 2022). Experts who "fail[] to limit damages to a reasonable approximation of actual infringing uses of the claimed method" face exclusion. *Id.*

Mr. Holzen's damages opinions are based on fundamentally flawed royalty base and royalty rate calculations, including because they are not tied to acts of alleged infringement of the asserted method claims during the alleged damages window. Mr. Holzen's royalty base erroneously included all paid memberships regardless of alleged use, and thus incorrectly treated the claims as system and not method claims. Mr. Holzen's royalty base is also faulty. First, Mr. Holzen's royalty rate is based on a two-week test performed in 2014, which he then extrapolated to represent all U.S. subscribers' use of Post-Play from March 7, 2016 to August 9, 2020 without support. Second, neither Dr. Almeroth nor Mr. Holzen explained how that 2014 test supports an opinion that use of the Netflix Service satisfies all of the steps of any asserted claim as the law requires of Robocast to show infringement and justify damages. Notwithstanding Robocast's burden to prove damages, Mr. Holzen failed to quantify instances of alleged infringement during the damages window when opining that Netflix would have agreed to pay ███████████ to use the elective Accused Functionality that was added after Netflix already enjoyed considerable success. Ex. 24 at 83:5-7, 84:20-85:2.

### 1.    Mr. Holzen's Royalty Base Erroneously Includes Non-Infringing Use

Mr. Holzen's royalty base is contrary to law. Mr. Holzen opined that Robocast and Netflix in August 2012 would have structured the payment terms of the hypothetical license on a paid membership basis inclusive of all of Netflix's paid memberships within the alleged damages

window.  Ex. 7 at ¶ 93.[13]  But the overall number of paid memberships has no relationship to the allegedly infringing use of the Accused Functionality.  There is no dispute that the Netflix Service does not always allegedly infringe, Post-Play experiences do not always allegedly infringe, and even the existence of the Accused Functionality during Post-Play does not always allegedly infringe.  *See supra* at Sec. VI.B.1.  At bottom, Mr. Holzen assumed that because all paid memberships are purportedly ***capable of*** allegedly infringing, they should all be included in the royalty base.  But again, ***capability*** is not the test—the Asserted Claims are methods, not systems.  *See Niazi*, 30 F.4th at 1357; *Mirror Worlds*, 692 F.3d at 1358; *INVT*, 46 F.4th at 1371; *Fujitsu*, 620 F.3d at 1329.

In *Niazi*, the patentee's damages expert included in his calculation all of the accused infringer's products sold on the basis that the devices were capable of practicing the asserted method claims, "even though it was undisputed that not all of those sold devices had been used to practice the claimed method."  *Id.* at 1357.  The Federal Circuit affirmed the district court's exclusion of the patentee's damages expert, reasoning that "[d]amages should be apportioned to separate out noninfringing uses, and patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method."  *Id.*  The Federal Circuit explained that "where the only asserted claim is a method claim, the damages base should be limited to products

---

[13] Mr. Holzen's royalty structure was not disclosed during fact discovery and is also the subject of Netflix's motion to strike.  D.I. 348.  Relying in part on interviews from Mr. Torres and Mr. Smith, Mr. Holzen opines that the parties would have structured the royalty as a running royalty, ██████████████████████████████████████████████████████████████████.  Ex. 33 at ROBOCAST000022; Ex. 34 at ROBOCAST000007; Ex. 35 at ROBOCAST001972; *supra* at Sec. III.D.  Yet, in its interrogatory response, Robocast stated that it was "premature" for Robocast to select a royalty structure because that requires expert analysis.  Ex. 31 at 192.  But the alleged facts upon which Mr. Holzen relies to support his opinions, including information from Robocast witnesses, should have been provided in fact discovery and were not.

that were actually used to perform the claimed method."  *Id.* (citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1358-59 (Fed. Cir. 2009)).

Here, like the expert in *Niazi*, there is no dispute that Mr. Holzen included in his royalty calculation Netflix subscriptions that had not been used to practice the claimed method.  In fact, Mr. Holzen conceded that his royalty base included members who do not use the Accused Functionality, including because they disable it or manually click to the next video.  Ex. 24 at 75:25-76:24, 164:13-19.  Despite citing evidence that there were Netflix members who had disabled the Accused Functionality, Mr. Holzen did not use these estimates even as a conservative way to apportion his royalty base.  Ex. 7 at ¶ 89 n.236.

Because Mr. Holzen included all Netflix paid memberships within the alleged damages window irrespective of whether subscribers used the Accused Functionality in an allegedly infringing way, Mr. Holzen's royalty base is overinclusive and contrary to Federal Circuit law.  *See Niazi*, 30 F.4th at 1357.  Just as the Federal Circuit affirmed the exclusion of the damages expert in *Niazi*, so too should the Court here exclude Mr. Holzen.  *See id.*; *see also Ecolab Inc. v. Dubois Chems., Inc.*, No. 21-567-RGA, 2023 WL 7019266, at *13 (D. Del. Oct. 25, 2023) (excluding opinion based on all sales of accused product "rather than apportioning the royalty base to the sales … associated with instances of alleged infringement").

### 2.    Mr. Holzen's Royalty Rate Is Speculative and Unreliable

Mr. Holzen's royalty rate is speculative and fails to reliably apportion between allegedly infringing and non-infringing uses of the Accused Functionality, contrary to law.  Mr. Holzen's alleged "apportionment" to Post-Play and then Autoplay has at least two fundamental flaws.  First, Mr. Holzen's royalty rate is based on a two-week test performed in 2014, which he then extrapolated to represent all U.S. subscribers' use of Post-Play from March 7, 2016 to August 9, 2020 without support.  Second, neither Dr. Almeroth nor Mr. Holzen explained how that 2014 test

supports an opinion that use of the Netflix Service satisfied all of the steps of any asserted claim as the law requires of Robocast to show infringement and justify damages. At bottom, and as discussed further below, Mr. Holzen's alleged "apportionment" is undermined by Robocast's experts' own admissions that they did not quantify allegedly infringing uses and that they did not set forth any specific acts of alleged infringement. *Compare* Ex. 7 at ¶¶ 223-226, *with* Ex. 24 at 39:18-24, 46:1-9, 51:18-52:41 *and* Ex. 23 at 19:9-20:2.

First, Mr. Holzen's alleged "Apportionment to Post-Play" and "Apportionment to Autoplay" occurred in a total of four paragraphs and primarily relied on two documents discussing ███████ from 2014, ***two years before*** the alleged damages window. Ex. 7 at ¶¶ 223-226 (citing Exs. 54, 58). These two documents purported to show ███████████ from a 2014 test.███████████████████████████████████████████ ██████████████████████████. Exs. 54, 58. The documents also showed ███ ████████████████████████ But neither document identified ███ ███████████████████████████████████████████████ ████████████████████████████████████. Mr. Holzen made no effort to show that ██████████████ from 2014 is somehow representative of U.S. subscriber behavior in 2014, much less two years later and for the entire alleged 4.5-year damages window from March 7, 2016 to August 9, 2020.

Second, and fatally, neither Dr. Almeroth nor Mr. Holzen opined that ██████████ shows anyone performed all limitations of any Asserted Claim. Neither expert identified any evidence that ███████████████ from 2014 says anything about the number of times anyone performed all steps of any asserted method claim, much less in the alleged damages window. Instead, Mr. Holzen testified that he relied on Dr. Almeroth to point to and quantify instances of alleged

infringement.  Ex. 24 at 39:18-24, 46:1-9, 51:18-52:24.  And Dr. Almeroth likewise pointed to none, as he in turn relied on Mr. Holzen.  Ex. 23 at 19:9-20:2, 125:1-22.

Experts who "fail[] to limit damages to a reasonable approximation of actual infringing uses of the claimed method" face exclusion.  *Niazi*, 30 F.4th at 1357.  Mr. Holzen's cursory "apportionment" has no reliable connection to any allegedly infringing uses of the Accused Functionality and is not tied to the damages window in this case. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Such untethered and unsupported damages expert opinions are routinely excluded.  *See Niazi*, 30 F.4th at 1357-58 (affirming exclusion of damages opinion as legally insufficient and unreliable where expert failed to "apportion" between infringing and non-infringing uses); *MLC Intellectual Property, LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1367-69 (Fed. Cir. 2021) (affirming exclusion of damages expert's royalty rate that is not "sufficiently tethered" to the evidence as speculative); *Koki Holdings Co. v. Kyocera Senco Indus. Tools, Inc.*, No. 18-313-CFC, D.I. 182 (D. Del. Sept. 21, 2020) (excluding opinions that were "contrary to Federal Circuit law"); *Eagle Harbor Holdings, LLC v. Ford Motor Co.*, No. 11-5503, 2015 WL 12670404, at *2 (W.D. Wash. Mar. 9, 2015) (excluding damages expert opinion that "failed to cite any evidence of actual use of the [accused] feature").  Mr. Holzen's damages opinions are unreliable and legally erroneous, and should likewise be excluded under *Daubert* and Federal Rule of Evidence 702.

## VII.    CONCLUSION

Netflix respectfully requests that the Court enter summary judgment in favor of Netflix.  If the Court declines to do so, Mr. Holzen's damages opinions should be excluded as contrary to law.

OF COUNSEL:

Tara D. Elliott (#4483)
Rachel Weiner Cohen
Ashley M. Fry
Diane E. Ghrist
Alessandra M. Schaszberger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

Kimberly Q. Li
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 880-4500

Dated: September 26, 2024

/s/ Kelly E. Farnan
RICHARDS, LAYTON & FINGER P.A.
Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
One Rodney Square
920 North King Street
Wilmington, DE  19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

*Attorneys for Defendant and Counterclaim Plaintiff Netflix, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2024, true and correct copies of the foregoing

document were caused to be served on the following counsel of record as indicated:

**VIA ELECTRONIC MAIL**
Stephen B. Brauerman
Ronald P. Golden III
Bayard, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801

**VIA ELECTRONIC MAIL**
Marc N. Henschke
HenschkeLaw, PLLC
77 Spring Road
Concord, MA 01742

**VIA ELECTRONIC MAIL**
Casey L. Shomaker
Samuel L. Moore
Steven Udick
Joseph Micheli
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, TX  75201

**VIA ELECTRONIC MAIL**
Steven Rizzi
Mariel Talmage
Grant Johnson
McKool Smith, P.C.
1301 6th Avenue, 32nd Floor
New York, NY 10019

**VIA ELECTRONIC MAIL**
Ramy E. Hanna
McKool Smith, P.C.
600 Travis Street, Suite 700
Houston, TX  77002

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)