IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBOCAST, INC.,                      )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        Civil Action No. 22-305-JLH
                                     )
NETFLIX, INC.,                       )
                                     )
            Defendant.               )

## MEMORANDUM ORDER

Before the Court in this patent infringement action is a motion to resolve a discovery dispute ("Motion") filed by Defendant Netflix, Inc. ("Defendant"), via which Defendant seeks *in camera* review of 25 exemplary documents from Plaintiff Robocast, Inc.'s ("Plaintiff" or "Robocast") privilege log ("log"). (D.I. 316)

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court writes briefly here and for the parties. A dispute arose in the case regarding whether certain categories of documents referenced on Plaintiff's log should be produced—or whether they should not be produced because they are protected from disclosure by the attorney-client privilege or the work product doctrine (together, "privileged"), *see In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (explaining the circumstances in which a document is protected by the attorney-client privilege); *FinancialApps, LLC v. Envestnet, Inc.*, Civil Action No. 19-1337-GBW-CJB, 2023 WL 1437809, at *4-5 (D. Del. Jan. 31, 2023) (same, as to the work product doctrine), or because they are not relevant. (D.I. 268) The Court discussed the issue with the parties at a July 22, 2024 videoconference hearing, (D.I. 311), and ordered Defendant to file the instant Motion relating to the dispute, (D.I. 342 at 158). Pursuant to the Court's further order, (*id*. at 158-59, 164, 171-74), on August 19, 2024, Defendant

identified 25 exemplary documents on the log, which Defendant broke down into seven

categories.  (D.I. 320; D.I. 324, App. A at 2)  As to the documents that fell into each category,

Defendant provided an explanation for why it believed the documents were not privileged and/or

were relevant, and thus why they should be produced.  (D.I. 324, App. A at 2)  Pursuant to the

Court's further order, (D.I. 342 at 173), on August 20, 2024, Plaintiff then provided the 25

documents to the Court for *in camera* review, along with a declaration from Brett Smith,

Robocast's Senior Vice President for Legal and Intellectual Property.  (D.I. 319; D.I. 320)  Mr.

Smith's declaration provides explanation in support of Plaintiff's arguments that the documents

are privileged and/or are irrelevant, and thus that they need not be produced.  (D.I. 325 ("Smith

Decl."))

## II.    DISCUSSION

Below, the Court, having reviewed the documents at issue *in camera*, addresses each

category of documents called out by Defendant, explaining which documents should or should

not be produced (and why).

### A.    Category One

Defendant's first category of documents was "[d]ocuments that Robocast has withheld as

purportedly nonresponsive because they relate to litigation funding:  Documents Nos. 4-5, 9, 11,

14-17[.]"  (D.I. 324, App. A at 2)  With the exception of Document No. 15, *see infra* n.1,

Plaintiff's sole basis for logging each of these documents were that they were non-responsive

because they related to litigation funding—and so that is the sole issue the Court will assess as to

these documents.  (*Id*. at 3-10); *see also Hinterberger v. Cath. Health Sys., Inc.*, 284 F.R.D. 94,

105 (W.D.N.Y. 2012).  The Court has previously ordered that litigation funding-related

documents are relevant to the case and should be produced to the extent that they relate to the value of the patents at issue in this litigation.  (D.I. 342 at 155-57)

After reviewing the documents in this category, the Court concludes that Document Nos. 4, 11, 14, 15,[1] 16, and 17 do not contain content that relates clearly or directly enough to the value of the patents at issue in this litigation.  Thus, these documents are not relevant and need not be produced.  Document No. 5 (containing representations relating to expected potential licensing revenue) and Document No. 9 (containing representations relating to potential reasonable royalty damages) do appear as if they contain information that could inform or relate to the value of the patents at issue in this litigation (perhaps in addition to other related patents in Plaintiff's portfolio), and so they should be produced.

### B.    Category Two

Defendant's second category of documents was "[d]ocuments for which Robocast has asserted work product protection but that are dated between 2016 (after Robocast entered into its license agreement with Vevo) and 2020 (the last alleged expiration date of the patents-in-suit) without evidence that it reasonably anticipated litigation during that timeframe and no litigation hold was in existence:  Document Nos. 6-7, 12, 23, 25[.]"  (D.I. 324, App. A at 2)  On this score, Federal Rule of Civil Procedure 26(b)(3) protects as work product only "documents and tangible

---

[1]    A portion of Document No. 15 (which was logged as being withheld as non-responsive both because it relates to litigation funding and because it contains material protected by the attorney-client privilege) does also appear to contain content reflecting the substance of a confidential attorney-client communication between Plaintiff and its counsel.  (Smith Decl. at ¶ 19; ROBO-REV0000012888)  But because the Court understands the document not to be relevant, it need not rely on attorney-client privilege to deny Defendant's request that the document be produced.

things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A).

With regard to Document No. 6, in his declaration, Mr. Smith explains that: (1) although he did not serve in a legal capacity at Robocast from June 2017 through May 2019; (2) before he left Robocast in June 2017, he directed Robocast employees to gather documents regarding another litigation target (not Defendant) that is referenced in the document; and (3) the document (even though it shows as having a date of October 3, 2017 on the log) was gathered pursuant to those instructions. (Smith Decl. at ¶ 11) Mr. Smith also explains that before he left Robocast in June 2017, he prepared Document No. 7 and Document No. 25 in anticipation of certain litigation; he further asserts that although the documents are listed as having March 2018-related dates in the log, this is because they were saved over with additional edits or saved as new versions by Robocast employees after Mr. Smith departed. (*Id.* at ¶ 12) With regard to Document No. 12, Mr. Smith's declaration, (*id*. at ¶ 16), and the content of the document, (ROBO-REV0000012478), demonstrate how it was prepared in anticipation of litigation in August 2019 (at Mr. Smith's direction, at a point when Mr. Smith was again acting as counsel for Robocast). In light of the above, the Court denies Defendant's request as to Document Nos. 6, 7, 12 and 25.

As for Document No. 23, Plaintiff refused to produce it on work product and attorney-client privilege grounds. (D.I. 324, App. A at 9) But as to work product, Mr. Smith's declaration does not explain how the document was prepared in anticipation of litigation. (Smith Decl. at ¶ 26) And as to attorney-client privilege, the Court does not see how the document contains the *content* of any attorney-client communication (instead, the document appears to

contain information akin to what might be seen on a privilege log). (ROBO-REV0000014776) So there is no basis to withhold Document No. 23 and the document shall be produced.

### C.    Category Three

Defendant's third category of documents was "[d]ocuments where Robocast has primarily asserted attorney-client privilege that were shared with non-attorney third parties, including Jon Hertzig and Jan Morgan:  Document Nos. 8, 10, 13, 15, 23-24[.]"  (D.I. 324, App. A at 2)  The Court has already disposed of Document Nos. 15 (not relevant) and 23 (must be produced) above.

The remaining documents—Document Nos. 8, 10, 13 and 24—are all listed as having been shared with Mr. Hertzig. (*Id.* at 4-9)  "Privileged persons," for purposes of the attorney-client privilege inquiry, include not only the client and its attorneys, but also "any of their agents that help facilitate attorney-client communications or the legal representation."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 359 (internal quotation marks and citation omitted).  Mr. Smith states that Mr. Hertzig was, in the relevant time period, an agent of Robocast who helped facilitate legal representation, in that he:  (1) served as a consultant to the company; (2) assisted Robocast (including its counsel) in drafting communications and other written work product, such as the materials at issue here; and (3) was compensated for that work by Robocast in warrants for common stock.  (Smith Decl. at ¶ 13)  And the text of some of these documents (i.e., Document Nos. 8, 10 and 24) further appear to support this explanation, as in them, there are notations indicating that Mr. Hertzig assisted with the drafting and/or saving of the documents. (ROBO-REV0000012333, ROBO-REV0000012338; ROBO-REV0000014780)  Mr. Smith's declaration and the documentary evidence therefore appears to indicate that Mr. Hertzig served as an agent of Robocast who facilitated attorney-client communications in the relevant time

period; thus, the fact that the documents at issue were shared with him would not vitiate any applicable privilege. *Cf. Symetra Life Ins. Co. v. JJK 2016 Ins. Tr.*, Civil Action No. 18-12350 (MAS)(ZNQ), 2019 WL 4931231, at *3 (D.N.J. Oct. 7, 2019) (noting that a confidential agent, for these purposes, can include a secretary who the client regularly employs to record and transcribe business letters); *Am. Standard, Inc. v. Pfizer Inc.*, Civ. A. No. 83-834, 1986 WL 9713, at *4 (D. Del. Mar. 31, 1986) (finding that documents prepared by outside consultants for a fee, in response to a client's request, were privileged).

For that reason, Documents Nos. 8, 10, 13 and 24 need not be produced in light of Mr. Hertzig's status as a recipient.  Document No. 13 will also be discussed further below.

### D.    Category Four

Defendant's fourth category of documents was "[d]ocuments for which Robocast asserts attorney-client privilege but, based on the 'Description' provided, the documents primarily relate to business concerns:  Document Nos. 1, 3, 22[.]"  (D.I. 324, App. A at 2)  For the attorney-client privilege to apply, the primary purpose of the communication at issue must be to gain or provide legal assistance (as opposed to, for example, rendering business advice).  *United States v. Gilead Scis., Inc.*, CIVIL ACTION NO. 17-1183-CMR, 2024 WL 3843595, at *2 (E.D. Pa. June 18, 2024); *see also LifeScan, Inc. v. Smith*, Civil Action No. 17-5552 and 19-8761 (CCC)(JSA), 2024 WL 4913027, at *12 (D.N.J. May 16, 2024).

Based on the content of the documents at issue and Mr. Smith's declaration, the Court agrees that Document Nos. 1 (which includes content from Robocast's one-time outside counsel Geoffrey Menin) and 22 (which contains content from Mr. Smith and Robocast's outside counsel) appear to include confidential attorney-client communications made for the primary purpose of providing legal advice (as opposed to business advice).  (ROBO-REV000005659;

ROBO-REV0000014016; Smith Decl. at ¶¶ 5, 25)  Mr. Smith's declaration indicates that

Document No. 3 was inadvertently marked on the log as being privileged when it fact it was not,

and that this document was produced to Defendant on August 14, 2024.  (Smith Decl. at ¶ 8)

So Defendant's request is denied as to Document Nos. 1 and 22 and is denied as moot as

to Document No. 3.

### E.    Category Five

Defendant's fifth category of documents was "[d]ocuments where Robocast asserts work

product protection and/or attorney client privilege allegedly based on Mr. Smith's involvement

(including when Mr. Smith was neither a Robocast employee nor providing any legal advice to

Robocast . . .:  Document Nos. 1, 3, 7, 13, 20-21, 25[.]"  (D.I. 324, App. A at 2 (citations

omitted))  The Court has already fully disposed of Document Nos. 1 (protected by attorney-client

privilege), 3 (moot), 7 (protected by the work product doctrine) and 25 (same) above.

With regard to Document Nos. 13 and 20, Mr. Smith states that these draft documents

contain and reflect his legal advice as to compliance with securities laws and other corporate law

matters and include privileged discussion of litigation strategy.  (Smith Decl. at ¶ 17)  The

documents do appear to contain at least some legal advice, which the Court presumes came from

Mr. Smith.  (*See, e.g.*, ROBO-REV0000012472)  And though the log includes dates in 2018

relating to these documents, (D.I. 274-22 at 43, 44; *see also* D.I. 324, App. A at 6, 8), Mr. Smith

states that this is because the documents were saved over with additional edits/revisions from

other Robocast employees after he departed the company, (Smith Decl. at ¶ 17).  And so Plaintiff

has established that Documents 13 and 20 need not be produced as they contain material that is

protected by the attorney-client privilege.

As to Document No. 21, the document does not have an associated date listed on the log, nor is it dated on its face.  (D.I. 274-22 at 36; D.I. 324, App. A at 9; ROBO-REV0000013690)  Mr. Smith avers that the content of the document relates to legal advice that he provided with regard to certain projects that needed to be performed by Robocast employees, and that he gave this advice in his role as Robocast's counsel.  (Smith Decl. at ¶ 24)  Based on this explanation, Document No. 21 need not be produced either, as it is protected by the attorney-client privilege.

### F.    Category Six

Defendant's sixth category of documents was "[d]ocuments for which Robocast has substantively changed the 'Description' between iterations of its log, which calls into question its privilege assertions:  Document Nos. 1, 9, 12-13, 15, 17-23, 25[.]"  (D.I. 324, App. A at 2)  The Court has already fully disposed of Document Nos. 1 (protected by attorney-client privilege), 9 (must be produced), 12 (protected by the work product doctrine), 13 (protected by attorney-client privilege), 15 (not relevant), 17 (not relevant), 20-22 (protected by attorney-client privilege), 23 (must be produced) and 25 (protected by the work product doctrine) above.

With regard to Document Nos. 18 and 19, the content of those documents and of Mr. Smith's declaration substantiates that they contain attorney-client privileged communications. (ROBO-REV0000013698, ROBO-REV0000013751; Smith Decl. at ¶¶ 22-23), and so they need not be produced.

### G.    Category Seven

Defendant's seventh category of documents was "[d]ocument that appears twice on Robocast's privilege log but has two very different descriptions:  Document No. 2."  (D.I. 324, App. A at 2)

Mr. Smith's declaration indicates that: (1) the first entry on the log regarding this document (dating from March 31, 2012) contains the correct information for the document; and (2) the document is one that Mr. Smith prepared in his role as Robocast's counsel in anticipation of the *Apple* and *Microsoft* litigations, and that it reflects his investigation regarding the cases and his advice on litigation-related matters, which was not shared outside Robocast. (Smith Decl. at ¶ 6) The Court has reviewed the document, (ROBO-REV0000005728), and agrees with Plaintiff that it is protected from disclosure by the attorney-client privilege and the work product doctrine.

## III.    CONCLUSION

For the reasons set out above, the Court ORDERS that: (1) Plaintiff shall produce to Defendant Document Nos. 5, 9 and 23, and shall do so, absent further Court order, by no later than **January 11, 2025**; and (2) Plaintiff need not produce the remaining documents at issue.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the order. Any such redacted version shall be submitted no later than **January 11, 2025** for review by the Court, along with a detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated:  January 8, 2025

*Christopher J. Burke*

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE